40 F.3d 900
 Marilyn HIRSCH, as the Administratrix of the Estate of
Stephen A. Hirsch, Plaintiff-Appellant,
v.
Steven BURKE, Individually and in his Official Capacity as a
Police Officer for the City of Indianapolis, and
Joseph McAtee, as Sheriff of Marion
County, Defendants-Appellees.
 No. 93-1574.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 13, 1994.
Decided Nov. 18, 1994.
 
 Michael K. Sutherlin (argued), Indianapolis, IN, for Marilyn Hirsch.
 MaryAnn G. Oldham, Allen K. Pope, Dale R. Simmons (argued), Office of Corp. Counsel, City Counsel Legal Div., John C. Ruckelshaus, Ruckelshaus, Roland, Hasbrook & O'Connor, Indianapolis, IN, for Steven Burke.
 MaryAnn G. Oldham, Allen K. Pope, Dale R. Simmons, Office of the Corp. Counsel, City Counsel Legal Div., Indianapolis, IN, for Joseph G. McAtee.
 Before POSNER, Chief Judge, MANION, Circuit Judge, and ASPEN, District Judge.*
 MANION, Circuit Judge.
 
 
 1
 Marilyn Hirsch, as administratrix of the estate of her husband, Stephen A. Hirsch (who died in an automobile accident unrelated to this suit during the pendency of this litigation), brought this civil rights action under 42 U.S.C. Sec. 1983 against Indianapolis Police Officer Steven Burke, in his individual and official capacities, and the Marion County Sheriff in his official capacity. Hirsch alleged the defendants violated her late husband's civil rights when they had him arrested and jailed for public intoxication when, in fact, he was a diabetic in a state of insulin shock. The district court denied Hirsch's claims and entered judgment in favor of the defendants. We affirm.
 
 I.
 
 2
 The facts most favorable to the judgment reveal that on April 5, 1986, Stephen Hirsch, his wife, and another couple attended a Pacers basketball game in Indianapolis. After the game, the two couples drove to an Indianapolis area night club, the Excaliber, to hear the Ramsey Lewis Trio. Testimony indicated that Stephen had one beer at the game and may have consumed another while at the club. After sitting a while at the club, Stephen complained that he felt hot and left to go outside for some fresh air.
 
 
 3
 As it turns out, Stephen was a Type I diabetic. This means that his pancreas had lost its ability to manufacture and secrete insulin. As treatment for this condition, Stephen carefully controlled his diet and administered to himself two insulin shots per day. Usually this treatment was successful in maintaining normal blood sugar levels; occasionally, however, his blood sugar level would not stabilize, causing him to go into insulin shock, a condition characterized by sweating, incoherence and a coma-like state.
 
 
 4
 Sometime after Stephen went outside, he ended up in the club's parking lot where a security guard observed him acting erratically and immediately summoned the police. Officer Steven Burke of the Indianapolis Police arrived at approximately 12:30 a.m. and was directed by the security guard to Stephen. Burke observed that Stephen was unsure of his footing and appeared incoherent. Upon closer examination, Burke observed that Stephen had bloodshot eyes and smelled of alcohol. Burke asked Stephen several questions, including whether he could recall his name, birthdate, and whether he was with anyone at the club, to which he got mixed responses. Stephen could not recall his name or birthdate, but he did say that he had been inside the club drinking. Burke testified that during this questioning, Stephen became "belligerent" in a manner similar to that Burke had experienced when dealing with people who were drunk. At no time, however, did Stephen tell Burke that he was a diabetic.
 
 
 5
 Based on these observations, Burke arrested Stephen for public intoxication and took him to the city lock-up for the Marion County Jail. Burke handed Stephen over to the receiving officers for book-in at 12:40 a.m. During the course of the book-in, Stephen was uncooperative and refused to provide the jailers with necessary information, including his identity and medical matters. Because of his uncooperativeness, the jailers placed Stephen in a cell in what is called the M-section, a section for uncooperative detainees as well as those with uncertain medical or mental conditions at the time of book-in, where he would be checked on approximately every half hour.
 
 
 6
 Stephen apparently passed out while in his cell, but later awoke around 1:30 a.m. At that point he got the attention of the jailers and informed them of his diabetic condition and that he was suffering from insulin shock. In the meantime, Stephen's wife and friends had located him at the jail and told the lock-up medical officer on duty at the time, Deputy Sheriff Edgar Sosbe, of Stephen's diabetic condition. Stephen was then taken to Wishard Memorial Hospital where he arrived at around 2:15 a.m. While there he was given a blood test (which showed almost no alcohol but very high levels of insulin). He was also given some orange juice to normalize his blood sugar level. The examining physician recommended that Stephen test his blood sugar level and make any necessary adjustments to his insulin intake. Following this, Stephen was returned to the jail at approximately 4:15 a.m.
 
 
 7
 Later, at approximately 11:00 that morning, Stephen was examined by Joseph Nielander, a deputy sheriff and L.P.N. trained in the treatment of diabetes and other conditions. Nielander reviewed Stephen's medical records and attempted to elicit some information from Stephen. Stephen again was uncooperative. Nielander offered Stephen some food (a diabetic plate) and insulin, but Stephen refused. Nielander testified that he would normally offer diabetics the opportunity to test their blood sugar, but stated that he did not recall whether he had made such an offer to Stephen.
 
 
 8
 Shortly thereafter, at 12:40 p.m., Stephen was released on his own recognizance. The next day, on April 7, the prosecutor declined to file formal charges against Stephen and the case was dismissed.
 
 
 9
 On March 17, 1987, Marilyn Hirsch, as administratrix of Stephen's estate, brought this action under 42 U.S.C. Sec. 1983 against Burke, both in his individual capacity and in his official capacity as an officer for the City of Indianapolis, Marion County Sheriff Joseph McAtee, in his official capacity, and various other named and unnamed deputies and correctional officers at the Marion County Sheriff's Department.[1] She asserted four theories: (1) Burke in his individual capacity violated Stephen's rights by arresting him without probable cause in violation of the Fourth and Fourteenth Amendments; (2) Burke, in his official capacity, was, due to the City's policy and practice, inadequately trained to recognize the symptoms of diabetes which in turn caused Stephen to be arrested without probable cause; (3) the Marion County Sheriff engaged in a policy or practice of inadequately training his staff to recognize and treat medical problems, thus violating Stephen's rights as a pretrial detainee to be free from conditions amounting to punishment under the Eighth and Fourteenth Amendments, and to receive adequate medical care; and (4) that the Marion County Sheriff was deliberately indifferent to Stephen's medical needs and acquiesced in the book-in practices. A three-day trial was held before a district judge. Twenty-three months after trial the district court issued its findings and conclusions of law in which it entered judgment in favor of all defendants.
 
 II.
 
 10
 Hirsch challenges many of the district court's findings and conclusions of law. In assessing these challenges we are guided by the language of Fed.R.Civ.P. 52 which states that "[f]indings of fact ... shall not be set aside unless clearly erroneous." A finding is clearly erroneous " 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " Anderson v. City of Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). The district court's application of the correct legal standard to its factual findings is subject to the same clear error standard. Daniels v. Essex Group, Inc., 937 F.2d 1264, 1269-70 (7th Cir.1991).
 
 A. False Arrest
 
 11
 Hirsch first challenges the district court's determination that Stephen's arrest for public intoxication did not violate the Fourth Amendment. Specifically, Hirsch contends that in making its determination the district court relied upon certain hearsay testimony which Hirsch had successfully challenged at trial. On direct examination, Hirsch's counsel asked Officer Burke to explain his procedure for determining whether a suspect was intoxicated. In response, Burke stated that he relied on what he "observe[d] through [his] senses," as well as information from the club's security guards that Stephen was being disruptive inside the club and refused to leave. Hirsch's counsel objected to this last portion of Burke's answer on the grounds that it was non-responsive and that it contained hearsay. The district court sustained Hirsch's objection. In its findings of fact, however, the district court included what the club's guards had told Officer Burke. From this, Hirsch concludes the district court relied upon this hearsay testimony in its determination that Burke had probable cause to arrest Stephen. Hirsch contends that without this hearsay evidence, no reasonable fact-finder could have concluded that this arrest was supported by probable cause. We will reverse the district court's finding of probable cause for clear error only. Mahoney v. Kesery, 976 F.2d 1054, 1059 (7th Cir.1992).
 
 
 12
 We need not delve into whether this unsolicited testimony of Officer Burke was hearsay (although we do note that this testimony was not offered by Hirsch to prove the matter asserted), because there is no question that based on his own observations Officer Burke had probable cause to arrest Stephen for public intoxication. "Probable cause for an arrest exists if, at the moment the arrest is made, the facts and circumstances within the officer['s] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent person in believing that an offense has been committed." Hughes v. Meyer, 880 F.2d 967, 969 (7th Cir.1989), cert. denied, 495 U.S. 931, 110 S.Ct. 2172, 109 L.Ed.2d 501 (1990). The offense which Burke believed Stephen committed in his presence was that of public intoxication which, under Indiana law, consists of (1) being in a public place; (2) in a state of intoxication. Ind.Code Sec. 7.1-5-1-3. At the moment of the arrest, Burke had observed the following: Stephen had trouble balancing himself and appeared incoherent. He smelled of alcohol and had bloodshot eyes. He was unable to state his name or date of birth. At no time did Stephen indicate that he was a diabetic, nor did a patdown search of Stephen following his arrest present Burke with anything, such as a medical identification tag or bracelet, that would have put him on notice that Stephen was a diabetic. From these facts a reasonable officer could have concluded that Stephen was committing the misdemeanor of public intoxication. Hirsch's only rejoinder is that the medical report from Wishard hospital indicated that at the time of Stephen's examination there was no alcohol in his blood. But this post-arrest evidence is irrelevant to whether Burke had probable cause at the time of arrest. See, e.g., Maltby v. Winston, 36 F.3d 548, 557 (7th Cir.1994) ("[T]he probable cause determination is made at the moment the arrest is made.") (citations omitted) (quotations omitted). This is hardly the case where we are "left with a definite and firm conviction that a mistake has been committed." Anderson, 470 U.S. at 573, 105 S.Ct. at 1511. Hence, the district court's finding of probable cause was not clearly erroneous.
 
 B. Municipal Liability: Failure to Train
 
 13
 Hirsch's next two claims were based on the theory that defendants'[2] failure to adequately train their various personnel to recognize and distinguish symptoms of diabetes from intoxication resulted in the violation of Stephen's civil rights. Hirsch's theory at trial was that the defendants' failure to train their officers reflected not only a deliberate indifference to the rights of diabetics suffering from insulin shock to be free from unlawful arrests for public intoxication, but also to the due process rights of such persons, as pretrial detainees, to be free from conditions amounting to "punishment" and to obtain necessary medical care.
 
 
 14
 We start with some general principles regarding municipal liability under Sec. 1983. Monell v. New York City Dept. of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), teaches that municipalities are liable under Sec. 1983 only when it can be shown that the municipality, in executing its official policy or practice, has caused the constitutional violation. Id. at 694, 98 S.Ct. at 2037. It is not enough for a Sec. 1983 plaintiff seeking to attach liability to the municipality to merely show that the agents or employees of the municipality inflicted the injury; Sec. 1983 states that liability will attach only when a governmental entity causes the violation, and proceeding against a municipality under a theory of respondeat superior falls short of establishing this level of causation. Id. at 692-94, 98 S.Ct. at 2036-38.
 
 
 15
 Hirsch is claiming municipal liability under Sec. 1983 based on an omission--in this case failure to train. To prove causation she must demonstrate that this omission evidences " 'a deliberate choice to follow a course of action ... from among various alternatives' by city policymakers." City of Canton v. Harris, 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 483-84, 106 S.Ct. 1292, 1299-1301, 89 L.Ed.2d 452 (1986) (plurality)). In keeping with this, the Court in Canton stated the rule that claims of municipal liability under Sec. 1983 based on inadequate training "can only yield liability against a municipality where that city's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants." Canton, 489 U.S. at 392, 109 S.Ct. at 1206. What this means in the present context is that before these defendants may be deliberately indifferent to the constitutional rights of diabetics, Hirsch had to show that the defendants were on notice of a pattern of constitutional violations resulting from the inadequate training of the police and jail personnel in recognizing diabetic shock. This notice of violations would have to show that the failure to provide further training was tantamount to a deliberate or conscious decision on the part of the defendants to allow the violations. See Canton, 489 U.S. at 395, 109 S.Ct. at 1208. (O'Connor, J., concurring).
 
 
 16
 The district court entered various findings and conclusions in which it rejected this portion of Hirsch's suit. Hirsch takes issue with several of the district court's subsidiary findings. We need not detail the district court's findings nor Hirsch's specific challenges, for Hirsch's case, as a matter of law, cannot establish municipal liability under Sec. 1983 based on inadequate training. As stated earlier, before a municipality may be held liable under a "failure to train" theory, it must first be established that the defendants were on notice of constitutional violations committed by their inadequately trained employees. But Hirsch put forth no such evidence. There was no evidence, for example, indicating past incidents of the City's police mistakenly arresting apparently intoxicated people who, it later turns out, were merely suffering from diabetic shock. Furthermore, Hirsch presented nothing indicating that the Marion County Sheriff's Department had engaged in a pattern of mistakenly detaining people with symptoms of diabetic shock or failing to medically treat those same individuals when their true malady was discovered.[3] In short, there is absolutely nothing in this record to show that the defendants were on notice of any constitutional violations, much less that they were deliberately indifferent to them. About the closest Hirsch gets to alleging anything of an objectionable nature is the failure of the Sheriff's personnel, following Stephen's return from Wishard Hospital, to heed the examining physician's recommendations and provide Stephen with food and the opportunity to monitor his blood sugar level. According to Deputy Nielander's testimony, diabetic detainees were ordinarily offered diabetic meals and the opportunity to monitor their blood sugar levels; yet for some unknown reason these services were apparently not offered to Stephen until almost seven hours after he had returned from the hospital.[4] But this isolated incident at most constitutes simple negligence on the part of the Sheriff's personnel which, as we know from Canton, will not suffice to attach liability under Sec. 1983. Canton, 489 U.S. at 391-92, 109 S.Ct. at 1206-07. Without delving into Hirsch's irrelevant factual challenges, we affirm the district court's decision to reject Hirsch's claims of municipal liability under Sec. 1983.
 
 
 17
 C. Twenty-Three-Month Delay in the Issuance of the District Court's Order
 
 
 18
 Throughout his brief and oral argument, Hirsch's counsel repeatedly stressed that his client was allegedly prejudiced because the district court did not render its written opinion until twenty-three months after the conclusion of the trial. Counsel's position apparently was that the district court's long delay in rendering its opinion caused the district judge to have a less than accurate recollection of the evidence presented. Counsel contends this time lapse led to the claimed inaccuracies in the district court's factual findings. At argument we pointed out that the delay was irrelevant; if the court misstates the record, a short or a lengthy interval between trial and the court's opinion would not matter. Counsel's only rejoinder was that due to the lengthy delay, he was forced to go over the record line-by-line in order to accurately assess the evidence in support of the district court's factual findings. Of course, counsel is obligated to meticulously review the record in any case in which he challenges the district court's disposition. And since Hirsch's counsel did not point us to anything indicating a variance between the record and the court's findings, his complaints about delay have no consequence.
 
 
 19
 Moreover, had counsel been that concerned about the district court's delay he could have filed a writ of mandamus ordering the district court to expedite its opinion. Section 1651 of Title 28 provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate...." Rule 21 of the Federal Rules of Appellate Procedure sets forth the appropriate procedure for filing a writ of mandamus with the clerk of the court of appeals directed to a particular district judge. But at no time during this twenty-three-month period did counsel file such a writ. From the materials included in Hirsch's appendix, particularly two newspaper articles featuring quotes from Hirsch's counsel, we gather that this portion of the appeal is better characterized as a continuation of this particular attorney's quest for the federal system to adopt a "lazy judge" rule--under which, if the trial court does not rule within a prescribed period of time a reviewing court, upon petition, may transfer the case to another trial judge. See, e.g., Ind.Trial Rule 53.1. Counsel should note that such proposals to change the Federal Rules are to be directed to the advisory rules committee of the Judicial Conference, not this court.
 
 III.
 
 20
 Finding no reversible error, we AFFIRM the district court's opinion.
 
 
 
 *
 Hon. Marvin E. Aspen, of the United States District Court, Northern District of Illinois, is sitting by designation
 
 
 [1]
 The original complaint was also filed as a class action against the named defendants. The class action was dismissed before trial
 
 
 [2]
 Where appropriate, we shall refer to the City and the Marion County Sheriff's Department collectively as the "defendants" in this portion of the opinion addressing municipal liability
 
 
 [3]
 Moreover, holding someone in jail pending a determination of probable cause for continued confinement is not "punishment" under the Constitution, see Bell v. Wolfish, 441 U.S. 520, 536-37, 99 S.Ct. 1861, 1872-73, 60 L.Ed.2d 447 (1979), so, contrary to Hirsch's assertions, that right is not even at issue in this case
 
 
 [4]
 We are also at a loss to understand why he was even held so long, especially with his wife and friends standing by from the time that he went to the hospital at 2:30 a.m