**William J. BIELECKI, Appellant,**

v.

**Robert D. NETTLETON and Alice T. Nettleton, Appellees.**

No. 94 C 7417.

United States District Court, N.D. Illinois, Eastern Division.

April 10, 1995.

William J. Bielecki, Lisle, IL, pro se.

Cindy M. Johnson, Teller, Levit & Silvertrust, Forrest L. Ingram, Chicago, IL, for Robert Nettleton, Alice Nettleton.

John J. Lag, Chicago, IL, for Cathy Nettleton.

Cindy M. Johnson, Teller, Levit & Silvertrust, Chicago, IL, for Band J Auto Repair, Inc., Service Stations, Inc., R. Cox Oil Co., Inc., Palatine Oil Co., Inc., Casey Contractors, Inc., Bank of Bellwood, Ronald L Cox.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This matter comes before us on William J. Bielecki's appeal from a final judgment order of the United States Bankruptcy Court for the Northern District of Illinois. For the reasons set forth below, we affirm the decision of the bankruptcy court.

### I. Background

In 1983, Robert Nettleton purchased Bellwood Marathon, an automobile service and gas station in Bellwood, Illinois. He owned two other corporations at the site: Service Station, Inc. and B & J Auto Repair. Nettleton's fuel supplier for the service station was Ronald L. Cox. As the bankruptcy court succinctly noted, Nettleton encountered two problems with the fuel supply:

> First[ ], he did not have the charts used to measure the capacity of the tanks, and therefore was never able to determine precisely how much gas was in each tank. Second[ ], Cox required payment for each load of fuel at the time of delivery. Nettleton paid Cox with checks which were often returned for non-sufficient funds. As things developed, the first problem was related to the second. Nettleton was losing money in the gas station business because the gas tanks were leaking gasoline into the ground.

Bankruptcy Court Memorandum Opinion and Order at 2. In 1988, Nettleton listed Bellwood Marathon with a real estate broker in an attempt to sell the property. In November of that year, Nettleton sublet some repair work to William Bielecki, who owned and operated a truck and auto shop in Elmhurst, Illinois. When Bielecki approached Nettleton for payment, Nettleton asked Bielecki whether he would be interested in purchasing Bellwood Marathon. On February

13, 1989, the parties signed a "Notice of Sale," whereby Bielecki agreed to buy Bellwood Marathon in return for assuming $134,000 of Nettleton's obligations. The parties agreed, however, that no closing would take place until October, 1989, although Bielecki would be entitled to immediate possession of the property.

Bielecki began running the station, and made various payments on Nettleton's behalf, including monthly mortgage payments to the Bank of Bellwood and $4,615 toward a $41,900 debt held by Cox.[1] However, Bielecki discontinued the mortgage payments when he learned that they were being applied to outstanding tax obligations on the property. He nonetheless continued looking for financing for the purchase. In July, 1989, the Bank of Bellwood offered Bielecki a mortgage commitment and $25,000 in working capital; a few weeks later, however, the offer was withdrawn by the Bank. Two months later, Bielecki obtained a mortgage commitment from the National Bank of Commerce in Berkeley, Illinois.[2] In November, the Bank of Commerce informed Bielecki that the station's underground tanks had to be tested, pursuant to Illinois law. Although Nettleton told Bielecki that the tanks were fine, Nettleton contacted Cox requesting a soil test. As noted above, the test revealed that the soil was contaminated.

In January, 1990, Bielecki wrote Nettleton and withdrew his offer to purchase the property, and soon thereafter vacated the premises. The following year, Robert and Alice Nettleton filed a Chapter 13 bankruptcy petition, which was dismissed in May, 1991 due to the Nettleton's failure to attend a creditors' meeting. In November, 1991, the Nettletons filed a Chapter 7 bankruptcy petition, listing Bielecki as a creditor with a disputed claim and as a party against whom the Nettletons might have a claim. In May, 1992, Bielecki filed an adversary complaint *pro se* against the Nettletons and various other parties who were ultimately dismissed. Following an eight day trial which occurred over the period of about fourteen and one-half months, the bankruptcy court took the case under advisement. In a written memorandum opinion and order, the bankruptcy court denied Bielecki's request for relief, prompting the present appeal.

## II. Standard of Review

When reviewing bankruptcy court decisions, this court acts as an appellate court. Fed.R.Bankr.P. 8013. Accordingly, this court will review the lower court's findings of fact for clear error and will review de novo the bankruptcy court's conclusions of law. *In re Supreme Plastics, Inc.*, 8 B.R. 730, 734 (N.D.Ill.1980).

## III. Discussion

Appellant Bielecki first challenges generally the validity of the bankruptcy court's memorandum opinion and order. At the close of the trial on August 29, 1994, the bankruptcy court stated that it needed to review the transcripts because of the lengthy period of time over which the adversary proceeding was tried. According to Bielecki, the bankruptcy court docket sheet reflects that the transcripts for three of the trial days were not filed with the court until October 17, 1994. In addition, Bielecki suggests that various portions of the transcripts are inaccurate or incomplete. The bankruptcy court issued its opinion on October 28, 1994. Based upon the condition of the transcripts and the relative speed with which the bankruptcy court ruled, in addition to the extended time over which the case was tried, Bielecki asserts that "it was impossible to adequately adjudicate the case …," and that these facts in and of themselves warrant reversal. App.Mem.Supp. at 5.

The above objections alone, however, do not provide a basis for reversing the bankruptcy court. The general prejudice alleged by Bielecki is insufficient to warrant reversal; he must demonstrate some inconsistency between the events which transpired during the trial and the findings made by the bank-

---

1. Pursuant to a note and fuel contract signed in February, 1989, Bielecki and Nettleton apparently assumed joint liability for Nettleton's debt to Cox.

2. In the meanwhile, on September 18, 1989, Nettleton signed a cancellation agreement with his real estate broker.

ruptcy court. *Cf. Hirsch v. Burke,* 40 F.3d 900, 905 (7th Cir.1994) ("[S]ince Hirsch's counsel did not point us to anything indicating a variance between the record and the court's findings, his complaints about delay have no consequence."). Accordingly, we shall limit our consideration on this appeal to the specific assertions of error advanced by Bielecki.

Bielecki objects to appellee Robert and Alice Nettleton's discharge under 11 U.S.C. §§ 523 & 727. We shall consider each section in turn.

### A. 11 U.S.C. § 523(a)(2)(A)

■ Section 523(a)(2)(A) prevents the discharge of any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by ... false pretenses, a false representation, or actual fraud...." 11 U.S.C. § 523(a)(2)(A). In *In re Kimzey,* 761 F.2d 421 (7th Cir.1985), the Seventh Circuit identified the necessary elements of a claim under Section 523(a)(2)(A):

> First, the creditor must prove that the debtor obtained the money through representations which the debtor either knew to be false or made with such reckless disregard for the truth as to constitute willful misrepresentation. The creditor also must prove that the debtor possessed scienter, *i.e.,* an intent to deceive. Finally, the creditor must show that it actually relied on the false representation, and that its reliance was reasonable.

*Id.* at 423 (citations omitted).[3] The creditor must prove by a preponderance of the evidence that a particular debt is not dischargeable. *See Grogan v. Garner,* 498 U.S. 279, 287, 111 S.Ct. 654, 659–60, 112 L.Ed.2d 755 (1991).

■ The bankruptcy court construed Bielecki's adversary complaint as raising four claims under Section 523(a)(2)(A), a construction endorsed on appeal by Bielecki. First, Bielecki claimed that Nettleton defrauded Bielecki by suggesting that he was selling Bellwood Marathon of his own free will, when in fact Cox was forcing Nettleton to sell the station by threatening prosecution for the bounced checks. Bielecki then extrapolated, suggesting that Cox and Nettleton conspired to defraud him in this regard, so that Cox could charge Bielecki, as the new purchaser, inflated prices for gasoline.

The bankruptcy court concluded that Bielecki presented "no credible evidence" in support of his allegations. It noted that Nettleton testified that he sought to sell the station because it was losing money and he was tired of running it. While acknowledging that this testimony was self-serving, the court found that it was essentially unrebutted. On appeal, Bielecki merely restates his allegations of conspiracy, based primarily upon supposition and circumstantial evidence. However, other than his general disagreement with the finding of the bankruptcy court, Bielecki fails to identify any error by that court. Between Nettleton's testimony and the materials and arguments put forth by Bielecki, the bankruptcy court concluded that Nettleton's testimony was the more credible, and that Bielecki had therefore not sustained his burden. Under these circumstances, we cannot conclude that the court's ruling was clearly erroneous. As the Supreme Court has noted, "where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). This is especially true in the present case, because the credibility of the witnesses is particularly within the province of the trier of fact, and is therefore entitled to special deference on review. *See In re Bonnett,* 895 F.2d 1155, 1157 (7th Cir.1989).[4] In short,

---

3. The Seventh Circuit recently clarified the final element of the *Kimzey* test. *See In re Mayer,* 51 F.3d 670, 675–76 (7th Cir.1995). However, because the bankruptcy court and this appeal focus solely on the first two elements of the *Kimzey,* we need not consider what, if any, impact the discussion in *Mayer* would have in this case.

4. Bielecki generally suggests that, because the trial took place on scattered days over fourteen-plus months, the bankruptcy court lost the ability to recall or determine the credibility of the witnesses. However, the record reflects that Nettleton testified on trial days in June, July, and August of 1994, just a few months before the bankruptcy court issued its ruling. As a result,

because the record supports the bankruptcy court's conclusion that Nettleton sold the station of his own volition, that conclusion cannot constitute clear error.[5]

█ Next, Bielecki argued (and continues to assert on appeal) that Nettleton defrauded him into agreeing to delay the closing date. Bielecki suggests that the "real" reason for the delay was so that the Nettletons' agreement with their real estate broker would expire, and they would then be able to avoid paying the broker a commission on the sale. At trial, however, Nettleton introduced evidence showing that he cancelled the brokerage agreement on September 22, 1989, and that the broker charged him $3,500 for the cancellation. Bielecki did not rebut this evidence, nor did he specify what misrepresentation Nettleton allegedly made.[6] In light of these facts, we cannot conclude that the bankruptcy court erred in holding that Bielecki failed to prove by a preponderance of the evidence that Nettleton made misrepresentations regarding the delay.

█ Bielecki also claims that the bankruptcy court erred in rejecting his assertion that Nettleton fraudulently induced him into spending "earnest money" in anticipation of the closing on Bellwood Marathon. The bankruptcy court concluded that the agreement between Bielecki and Nettleton "clearly contemplated that the sale would be consummated in the future," and that any expenditures by Bielecki were due to his own overeagerness, rather than Nettleton's duplicity. Memorandum Opinion and Order at 10.

These conclusions are findings of fact, and thus subject to a clearly erroneous standard of review. *See In re Neis,* 723 F.2d 584, 589 (7th Cir.1983) (issue of intent is one of fact). As with Bielecki's other claims, he does not assert that this finding is without support in the record. Instead, he reargues his conspiracy theory, implicitly asserting that it is the more likely explanation. As discussed above, however, our function is not to retry the case; we must merely determine whether the bankruptcy court's finding is plausible in light of the evidence presented at trial. *See Anderson,* 470 U.S. at 574, 105 S.Ct. at 1511–12. As discussed above, there is evidence that Nettleton intended to close on the sale of Bellwood Marathon. On the other hand, there is a relative dearth of evidence supporting Bielecki's assertion that Nettleton misrepresented his intentions, thus inducing Bielecki to expend sums of money prior to closing. In light of these facts, we cannot conclude that the bankruptcy court's decision to adopt the former alternative was clearly erroneous.

The same is true of Bielecki's final claim of error under Section 523. He asserts that Nettleton committed fraud in failing to disclose that the underground gasoline storage tanks were leaking. The bankruptcy court found that Nettleton should have realized that the tanks were leaking, although he lacked actual knowledge of that fact. The court concluded, however, that Nettleton's representation to Bielecki that there were no problems with the tanks was merely negli-

---

even if the protracted and sporadic nature of proceedings warranted remanding for a new trial (a contention we seriously question, *see Hirsch,* 40 F.3d at 905), this is clearly not a case in which such action is warranted.

5. We must confess some confusion as to the scope and purpose of the alleged conspiracy. Bielecki suggests at one point in his brief that Nettleton and Cox had incentive to make a quick sale of the property, both because Cox was demanding payment on his debt, and Nettleton could not pay off Cox without selling the station, and because the soil was contaminated from gas leakage, and they could not afford to have a prospective buyer discover the contamination prior to sale. App.Mem.Supp. at 14. As discussed further in this opinion, however, Bielecki also asserts that Nettleton purposefully *delayed*

closing on the sale, so he could avoid paying a brokerage commission. Finally, Bielecki claims that Nettleton and Cox conspired to convert the sale agreement to a lease agreement in October, 1989. Although he asserts that the reason for this change of heart was that Illinois law mandated soil testing prior to the transfer of the property, the law imposing that requirement, the Illinois Responsible Property Transfer Act of 1988, did not take effect until November, 1989, and it was not until that time that Bielecki asked for a site assessment. The ambiguous nature of the alleged conspiracy provides further support for the bankruptcy court's conclusion.

6. Indeed, Bielecki implicitly acknowledges that Nettleton made no representation whatsoever as to why he did not an immediate closing. App. Mem.Supp. at 11.

gent, and therefore not a basis for denying discharge.[7] On appeal, Bielecki merely restates the allegations which support the bankruptcy court's finding of constructive knowledge of the condition on Nettleton's part. However, he again fails to directly address the findings of the bankruptcy court, or explain why they should be disregarded.

■ We agree with the bankruptcy court that Nettleton should have known that there was a problem with the tanks. However, this conclusion does not necessarily translate to a finding that the representation Nettleton made to the contrary was known to be false when made, or that it amounted to a willful misrepresentation. The bankruptcy court concluded that Nettleton did not make a reasonable effort to obtain measurement charts for the tank. Had he made such an effort, he might have been able to definitively determine that some of the gas going into the tank was not coming out, at least through the pump lines. However, the court concluded that the failure to exercise reasonable effort merely constituted negligence, presumably because that is the very definition of negligence. Accordingly, the bankruptcy court concluded that Nettleton's representation regarding the status of the tank was likewise no more than negligent. Issues of scienter are factual, rather than legal, questions, and are therefore subject only to "clear error" review. *See Gabellini*, 724 F.2d at 581. Because there exists ample support in the record for the bankruptcy court's finding in this regard, we cannot conclude that it was clear error. In sum, then, we affirm the bankruptcy court with respect to Bielecki's claims under 11 U.S.C. § 523(a)(2)(A).

### B. 11 U.S.C. § 727

■ Finally, Bielecki asserts that the bankruptcy court erred in rejecting his argument that the Nettletons should be denied discharge under 11 U.S.C. § 727. Section 727(a)(2), upon which the bankruptcy court relied, provides:

> (a) The court shall grant the debtor a discharge, unless—
>
> . . . .
>
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has ... transferred, removed, destroyed, mutilated, or concealed—
>
>> (A) property of the debtor, within one year before the date of the filing of the petition; or
>>
>> (B) property of the estate, after the date of the filing of the petition.

11 U.S.C. § 727(a)(2).[8] The bankruptcy court acknowledged that the Nettletons' petition "may have been problematic," but concluded that there was no evidence supporting a claim that those problems were the result of an intent to defraud the creditors or the trustee. On appeal, Bielecki again identifies the "problems" with the petition, apparently asking us to substitute our judgment regarding the Nettletons' intent for that of the bankruptcy court. That court, however, heard the testimony and reviewed the evidence regarding the alleged § 727 violations, and was in a far better position than this court to judge the Nettletons' credibility regarding the reasoning for their actions. *See In re Bonnett*, 895 F.2d 1155, 1157 (7th Cir. 1989). Because Bielecki has offered us no compelling reason to disregard this judg-

---

7. As noted above, Section 523 requires that the debtor makes a representation "known to be false when made 'or made with reckless disregard for the truth amounting to willful misrepresentation.'" *Gabellini v. Rega*, 724 F.2d 579, 580–81 (7th Cir.1984) (quoting *Carini v. Matera*, 592 F.2d 378, 380 (7th Cir.1979)).

8. Bielecki asserts that the bankruptcy court also erred in failing to recognize that his claim was brought not only under subsection (a)(2)(A) of 11 U.S.C. § 727, but also under subsections (a)(4)(A), (a)(4)(B), (a)(4)(C), and (a)(7). We initially observe that we are sympathetic to the

bankruptcy court's plight; Bielecki, acting without benefit of counsel, is not always particularly clear in his assertions. In any event, an essential requirement under *all* of the above sections is that the debtor act with fraudulent intent. *See* 11 U.S.C. § 727(a)(2)(A) (debtor must act with intent to defraud); 11 U.S.C. § 727(a)(4) (debtor must act "knowingly and fraudulently"); 11 U.S.C. § 727(a)(7) (incorporating standards of (a)(2) and (a)(4)). As a result, the bankruptcy court's holding applies equally to each of Bielecki's articulated grounds for denying discharge.

ment, and because it is plausible in light of the testimony at the trial, we cannot conclude that the bankruptcy court committed clear error.

### C. Sanctions

The Nettletons ask that we impose sanctions pursuant to Fed.R.Bankr.P. 9011. We agree with appellees that Bielecki's appeal was not well grounded in law; he failed to address the relevant standard of review, and accordingly failed to discuss the bankruptcy court's findings, or to articulate how those findings could be clear error. The advancing of rejected factual allegations and theories on appeal, without more, can virtually never establish that the trial court's rulings to the contrary were clearly erroneous.

Given this finding, we are obligated to impose sanctions. *See* Fed.R.Bankr.P. 9011(a) ("If a document is signed in violation of this rule, the court on motion or on its own initiative, *shall* impose on the person who signed it ... an appropriate sanction....") (emphasis added). While we are cognizant of Bielecki's *pro se* status, that factor does not insulate him from sanctions, *see, e.g., Anderson v. Steers, Sullivan, McNamar & Rogers,* 998 F.2d 495, 496–97 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1060, 127 L.Ed.2d 380 (1994), although we shall consider it in determining what sanction is appropriate. In light of all of the factors, including the arguments made by Bielecki, the nature of the trial, and Bielecki's status, we conclude that the appropriate sanction in this case is an award of costs to appellees. Accordingly, pursuant to Rule 9011 and Fed. R.Bankr.P. 8014, we award appellees their reasonable costs associated with this appeal. The Nettletons are directed to submit a Bill of Costs with this court on or before April 21, 1995.

### IV. Conclusion

For the reasons set forth above, the judgment of the bankruptcy court is affirmed. It is so ordered.