**In re Anthony ZOLNER, d/b/a Titan Trucking Company, Debtor.**

**No. 97 C 0771.**

United States District Court, N.D. Illinois, Eastern Division.

June 8, 2000.

---

## MEMORANDUM OPINION
## AND ORDER

PALLMEYER, District Judge.

Thwarted in their effort to pursue a legal malpractice claim assigned to them

by the Debtor, Appellant pension funds now claim that the Debtor defrauded them when he executed the assignment. Appellant, The Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Health and Welfare and Pension Funds (hereinafter "the Funds"), appeals the December 23, 1996 decision of the bankruptcy court that *sua sponte* dismissed the Funds' motion under 11 U.S.C. § 1144 to revoke confirmation of the Plan of Reorganization of Debtor Anthony Zolner, d/b/a Titan Trucking Company. The bankruptcy court dismissed the motion for two reasons: (1) the Funds did not file an Adversary Complaint as required by FED. R. BANKR. P. 7001(5); and (2) the Funds did not adequately allege the fraud necessary to revoke confirmation under 11 U.S.C. § 1144. For the following reasons, the decision of the bankruptcy court is affirmed.

## FACTUAL BACKGROUND [1]

Appellee, debtor Anthony Zolner, owns and operates Titan Trucking Company, a trucking business for transporting frozen foods and hazardous wastes. The Funds are employee benefit plans within the meaning of Section 3 of the Employee Retirement Security Act of 1984 ("ERISA") and third party beneficiaries of collective bargaining agreements entered into between contributing employers and the Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) ("CTDU Union").

Zolner was signatory to a series of collective bargaining agreements with the CTDU Union during 1979 to 1991, obligating him to make health, welfare, and pension contributions to the Funds. Under the labor agreements, unless the employer or the CTDU Union gave notice of modification or termination of the contract, they remained in effect.

Zolner was required to make employee benefit contributions to the Funds on behalf of all of his employees, but did so only for employees that were members of the CTDU Union. Consequently, the Funds sued Zolner in federal district court in 1989. Attorney Arnold Burke of the law firm of Siegan, Barbakoff, Gomberg & Kane, Ltd. represented Zolner in this suit. District Court Judge Charles Norgle for the Northern District of Illinois found Zolner liable for contributions on behalf of all of his employees on March 11, 1993.[2]

On June 16, 1993, Zolner filed a Chapter 11 petition. His case was assigned to Judge Schmetterer of the Bankruptcy Court for the Northern District of Illinois. Zolner's counsel during the bankruptcy proceedings was attorney William L. Needler of the law firm of William L. Needler & Associates, Ltd. The Funds sought $453,406.31 in delinquent contributions for the Pension Fund, $575,906.34 in delinquent contributions for the Health and Welfare Fund, and $303,488.68 in withdrawal liability for the Pension Fund.

Following an October 21, 1994 hearing held pursuant to FED. R. BANKR. P. 3018(a), Judge Schmetterer estimated the Funds' claims at $611,490.64 for purposes of counting their votes against Zolner's proposed Plan of Reorganization. *See In re Zolner*, 173 B.R. 629 (Bankr.N.D.Ill.1994). Of note, had the Funds cast its votes against the proposed Plan of Reorganization, the Plan could not have been confirmed under the requirements of 11 U.S.C. § 1129(a)(8).[3]

---

1. The facts are gleaned from the parties' appellate briefs submitted to this court.

2. Appellee contends that Judge Norgle left unresolved the extent of Zolner's liability, namely "the issue of who is entitled to participate under the Plan and amounts due." (Appellee's Brief on Appeal (hereinafter "Appellee's Brief"), at 3.) This open issue does not

however, alter the ultimate finding that Zolner was liable for all covered employees under the Plan.

3. Section 1129(a)(8) provides in pertinent part that a court shall confirm a plan of reorganization only if "each class of claims or interests ... has accepted the plan" or "is not

In an attempt to resolve the Funds' objections to the proposed Plan of Reorganization, the parties entered into settlement discussions. The Funds made an unusual proposal: the Funds offered to withdraw their objections and vote in favor of the confirmation of Zolner's proposed Plan of Reorganization in exchange for Zolner's assignment of any legal malpractice claims against his present and former attorneys. The parties' opening briefs are curiously silent about the nature of the alleged malpractice, but the Funds explain in their reply brief that Arnold Burke and the Siegan, Barbakoff attorneys who represented Zolner in the collection action allegedly failed to advise him that his liability to the Funds would have been "substantially curtailed if he had notified the Union of his intent to cancel the collective bargaining agreement." (Appellant's Reply Brief, at 4.) With respect to Attorney Needler, who represented Zolner in the bankruptcy court, the Funds assert that he "failed to seek rejection of the Union's collective bargaining agreement under 11 U.S.C. § 1113, thus increasing the eventual liability Zolner will owe to the Funds." (*Id.*)

There is no indication in the record of whether or to what extent the nature of these claims was explored in the settlement negotiations. Particularly noticeable for its absence is any explanation of how Attorney Needler, who presumably participated in the negotiations, responded to the proposal that his client should assign malpractice claims against Needler himself. What is clear, however, is that on April 18, 1995, the parties did enter into a settlement agreement and that Zolner executed an assignment of his malpractice claims. Central to this appeal is the provision in the assignment that Zolner would "cooperate with [the Funds] in executing and delivery any further documents and taking any further actions necessary or appropriate to effectuate the intent and purpose of this Agreement." (Assignment of Claim,

Ex. A to Brief and Appendix of Appellants (hereinafter "Appellants' Brief"), at 3.) Judge Schmetterer entered an order approving the assignment on June 7, 1995. Following the Funds' vote in favor of the proposed Plan of Reorganization, Judge Schmetterer entered an order confirming the Plan on March 18, 1996. The case was closed on July 1, 1996.

Soon after Zolner executed the assignment, the Funds filed a legal malpractice lawsuit against Burke, the Siegan Barbakoff law firm, Needler, and the Needler law firm in the Circuit Court of County, Illinois on June 16, 1995. Both sets of Defendants promptly moved to dismiss on the grounds that Illinois law prohibits the assignment of a legal malpractice claim because of the personal nature of the attorney client relationship and the potential for abuse. (Motion to Dismiss the Appellant's Complaint in the Circuit Court of Cook County, Illinois Action filed by Siegan, Barbakoff & Gomberg, Ltd. and Arnold Burke ¶ 6, Ex. C to Appellee's Brief; Motion to Dismiss the Appellant's Complaint in the Circuit Court of Cook County, Illinois filed by William L. Needler and William L. Needler and Associates, Ltd. ¶ 5, Ex. D to Appellee's Brief.) *See Brocato v. Prairie State Farmers Ins. Ass'n,* 166 Ill.App.3d 986, 988–89, 117 Ill.Dec. 849, 520 N.E.2d 1200 (4th Dist.1988) ("[S]ound public policy prohibits the assignment of these claims since an assignee would be a stranger to the attorney-client relationship, who was owed no duty by the attorney and who suffered no injury from the attorney's action").

Realizing their losing position, the Funds requested that Zolner substitute himself as plaintiff in the malpractice lawsuit pursuant to the understanding that Zolner provide the Funds with all necessary assistance and cooperation to effectuate the intent and purpose of the agreement. Zolner refused to do so. Instead, on July 17, 1996, he executed an affidavit stating, in effect, that he knew of no legal

impaired under the plan." 11 U.S.C. § 1129(a)(8).

malpractice claim and would not participate in any suit against his former attorneys. (*See* Zolner Aff. ¶¶ 5, 11, Ex. F to Appellant's Brief.) On July 19, 1996, the Illinois state court judge granted the motion to dismiss in the Funds' lawsuit.

On August 2, 1996, the Funds returned to the bankruptcy court and filed a motion seeking revocation of the confirmation of Zolner's plan of reorganization pursuant to 11 U.S.C. § 1144 and FED. R. BANKR. PRO. 7001(5). Section 1144 allows for revocation of an order of confirmation "[o]n request of a party in interest at any time before 180 days after the entry of the order of confirmation ... if any only if such order was procured by fraud." In this case, the 180–day period expired on September 14, 1996. Under FED. R. BANKR. PRO. 7001(5), an "adversary proceeding" includes "a proceeding ... to revoke an order of confirmation of a chapter 11 ... plan," meaning those brought under section 1144. An adversary proceeding must be commenced by a properly filed and served complaint. *See In re Perkins,* 902 F.2d 1254, 1258 (7th Cir.1990).

It is undisputed that the Funds did not file an adversary proceeding before September 14, 1996. Zolner filed a response to the Funds' August 2, 1996 motion on the merits on September 4, 1996. On September 25, 1996, Zolner claimed that the Funds' attempt to revoke confirmation could only proceed as an adversary proceeding.

At a hearing on October 23, 1996, the bankruptcy court initially overruled Zolner's procedural objection to the Funds' motion, ruling that the Funds were not required to file an adversary proceeding to revoke confirmation of the plan of reorganization. (Transcript of Oct. 23, 1996 Proceedings (hereinafter "Proceedings I"), at 5, Ex. J to Appellant's Brief.) The bankruptcy court instead treated the contested motion as a contested matter under Bankruptcy Rule 9014 and required the Funds to file an amended motion specifying the

particular fraud grounds asserted. (*Id.* at 15.)

After a further hearing on December 11, 1996, however, the bankruptcy court *sua sponte* dismissed the Funds' motion. In his oral ruling, Judge Schmetterer cited two reasons for his ruling. First, he noted, "an application to object to discharge must be filed by an adversary complaint as required by Bankruptcy Rule 7001." Second, in Judge Schmetterer's view, the motion did not state a "cause of action for fraud because it has not been demonstrated [that the Funds] have been defrauded of anything based on the facts alleged." (Transcript of Dec. 11, 1996 Proceedings (hereinafter "Proceedings II"), at 6, 9, Ex. K to Appellant's Brief.) Specifically, Zolner "couldn't defraud [the Funds] of something they couldn't obtain under Illinois law, which is an assignment of a claim of attorney malpractice against [his] own counsel." (*Id.* at 10.) On December 23, 1996, the bankruptcy court entered a written order dismissing the Funds' motion. The Funds filed a Notice of Appeal on December 27, 1996.

## DISCUSSION

### I. Jurisdiction and Standard of Review

 This court has subject matter jurisdiction over the Funds' appeal from the bankruptcy court pursuant to 28 U.S.C. § 158(a)(1), which vests the district court with jurisdiction over appeals from "final judgments, orders and decrees" of the bankruptcy court. When reviewing bankruptcy court decisions, the district court acts as an appellate court. *Bielecki v. Nettleton,* 183 B.R. 143, 145 (N.D.Ill. 1995) (citing FED. R. BANKR. PRO. 8013). "Review of the bankruptcy court's findings of fact are upheld unless they are clearly erroneous and review of the bankruptcy court's legal conclusions is de novo." *In re Home Comp Care, Inc.,* 221 B.R. 202, 205 (N.D.Ill.1998) (citing *In re Lefkas Gen. Partners,* 112 F.3d 896, 900 (7th Cir.1997)). The district court may consider only the evidence presented before the bankruptcy

court and made a part of the record. *Id.* at 205, n. 1 (citation omitted).

Appellant argues that the bankruptcy court abused its discretion in holding that the Funds' motion under 11 U.S.C. § 1144 to revoke confirmation of the Plan of Reorganization should have been filed as an adversary complaint rather than by motion. Appellant further contends that the bankruptcy court erred in holding that the Funds' motion under 11 U.S.C. § 1144 to revoke confirmation failed to state a fraud claim upon which relief could be granted. Appellee has moved for fees and costs, arguing that this appeal is frivolous. The court addresses each of these issues in turn.

## II. Does Section 1144 Require an Adversary Complaint?

■ Under the Bankruptcy Code, section 1144 is the only avenue for revoking confirmation of a plan of reorganization. *In re Longardner & Assoc., Inc.*, 855 F.2d 455, 460 (7th Cir.1988) (citations omitted). As an adversary proceeding, the proceeding is governed by the procedural requirements in Bankruptcy Rule 7001(5) such that the proceeding should be commenced by the filing of a complaint rather than a motion. *In re Perkins*, 902 F.2d 1254, 1258 (7th Cir.1990); *In re Data Entry Service Corp.*, 81 B.R. 467, 468, n. 1 (Bankr.N.D.Ill.1988). The Seventh Circuit, however, has explicitly recognized that this requirement is not jurisdictional and may be waived. *See In re Pence*, 905 F.2d 1107, 1109 (7th Cir.1990).

■ Parties "waive[ ] their right to protest the lack of an adversary proceeding when the court afforded them all the protections of an adversary proceeding yet they knowingly failed to litigate a Rule 7001 issue which they had an opportunity to litigate." *In re Zale Corp.*, 62 F.3d 746, 763 (5th Cir.1995). In essence, the parties must be apprized of and have a chance to address all the issues being decided. *Id.* (quoting *In re Haber Oil Co.*, 12 F.3d 426, 440 (5th Cir.1994)). Furthermore, unless

the party is able to demonstrate prejudice by the failure to file an adversary proceeding, a court will find the error constitutes harmless error. *In re Cannonsburg Envtl. Assocs., Ltd.*, 72 F.3d 1260, 1264–65 (6th Cir.1996).

■ The Funds urge the court to find that Zolner clearly waived his right to protest the lack of an adversary complaint by filing a response on the merits on September 4, 1996 and failing to raise the issue until after the 180–day deadline of section 1144 had expired. (Appellant's Brief, at 14–15.) None of the cases cited by the Funds, however, explicitly support that proposition. While it is clear that courts allow waiver of this technical, procedural requirement, the cases involve either an express waiver or a situation where none of the parties raised the procedural question. *See In re Pence*, 905 F.2d 1107, 1109 (7th Cir.1990) (noting that the debtor had expressly waived any objection to the adversary proceeding requirement, though not stating how explicit waiver was accomplished); *In re Mark Twain Marine Indus., Inc.*, 115 B.R. 948, 949 n. 1 (Bankr. N.D.Ill.1990) (concluding that the parties waived the formal adversary proceeding requirement by proceeding to decision by way of a contested motion procedure); *In re Coan*, 96 B.R. 828, 829 n. 1 (Bankr. N.D.Ill.1989) (finding waiver where neither party objected to proceeding by motion and parties had briefed the issues involved); *In re Data Entry Service Corp.*, 81 B.R. 467, 468 n. 1 (Bankr.N.D.Ill.1988) (resolving a matter as a contested motion rather than by the requisite complaint because no party raised the procedural question). Here, Zolner did object to the Funds' proceeding by motion rather than complaint, albeit not until after the 180 days had run. In other words, there was no explicit waiver and Zolner did object before the bankruptcy court to the technical noncompliance with Bankruptcy Rule 7001.

In addition to their waiver argument, the Funds contend that Zolner did not show he was prejudiced in any fashion by the filing of a motion instead of a complaint. They note, further, that Judge Schmetterer shifted his position from his initial ruling during the October 23, 1996 proceedings, in which he permitted the Funds to proceed by way of a motion without fully explaining the change in his reasoning. According to the Funds, an unexplained shift in position necessarily constitutes an abuse of discretion that must be reversed. To support that view, they cite one case, *GCIU Employer Retirement Fund v. Chicago Tribune Co.*, 8 F.3d 1195 (7th Cir.1993), *rev'd on other grounds*, 66 F.3d 862 (7th Cir.1995), where the district court *sua sponte* dismissed the plaintiff's suit with prejudice for failure to prosecute. 8 F.3d at 1196. The Seventh Circuit reversed the dismissal, not, as the Funds suggest, because the district court arbitrarily changed positions but because the district court had relied on an erroneous reading of the record. *See id.* at 1201. The case thus does not stand for the proposition that a change in positions is a *per se* abuse of discretion.

 This court reviews the bankruptcy court's rulings under an abuse of discretion standard. *American Express Travel Related Servs. Co., Inc. v. Baker*, 213 B.R. 834, 837 (N.D.Ill.1997) (citing *Pacific Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 118 (7th Cir.1994)). An abuse of discretion occurs when "no reasonable person could take the view adopted by the lower court." *Id.* (citations omitted). Nevertheless, while a deferential standard, it is "not toothless." *Land v. Chicago Truck Drivers, Helpers and Warehouse Workers Union Health & Welfare Fund*, 25 F.3d 509, 515 (7th Cir.1994) (citations omitted). A ruling based on an erroneous view of the law or on a clearly erroneous assessment of the evidence would be an abuse of discretion. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990).

Here, where Zolner failed to object to the Funds' proceeding by way of motion until after the 180–day period had expired, and made no showing of prejudice, this court might be inclined to reach a different conclusion on the issue. As discussed below, the court has finds no error in the second reason for Judge Schmetterer's ruling. Accordingly, the court makes no determination on the question whether requiring the Funds to proceed by way of complaint would constitute an abuse of discretion.

## III. Error for Finding no Claim for Relief for Fraud?

 It is well-recognized that section 1144 is the "only avenue for revoking confirmation of a plan of reorganization." *In re Longardner & Assoc., Inc.*, 855 F.2d 455, 460 (7th Cir.1988) (citations omitted). The authority to revoke under section 1144 arises "if and only if such order was procured by fraud." 11 U.S.C. § 1144. Although the statute does not define fraud, courts have construed the requirement to mean a showing of actual fraudulent intent. *In re Longardner*, 855 F.2d at 461; COLLIER ON BANKRUPTCY 1144.03, at 1144–4 (15th ed. rev.1998). "A determination of the existence of fraud necessary for the revocation of an order of confirmation of a Chapter 11 Plan must be made on the specific facts of each case with a view to whether, in each case, the requisite fraudulent intent has been demonstrated." *In re Doty*, 129 B.R. 571, 586 (Bankr.N.D.Ind. 1991). Under Illinois law, fraud requires proof that the defendant: (1) made false statements of material fact, (2) knowing that they were false, and (3) intending that the plaintiff would rely on them, (4) that plaintiff did rely, (5) that this reliance was justified, and (6) plaintiff suffered damage as a result. *TRW Title Ins. Co. v. Security Union Title Ins. Co.*, 153 F.3d 822, 828 (7th Cir.1998).

The bankruptcy court concluded that the Funds could not state a cause of action for fraud because they had not demonstrated

being defrauded of anything. (Proceedings II, at 9.) In other words, because the "right to pursue a legal malpractice claim was nonexistent under Illinois law ... it [could not] be defrauded on." *(Id.* at 11.) *See Brocato v. Prairie State Farmers Ins. Ass'n,* 166 Ill.App.3d 986, 988–89, 117 Ill. Dec. 849, 520 N.E.2d 1200 (Ill.App. 4th Dist.1988) (prohibiting assignment of legal malpractice claims in Illinois). The Funds, in contrast, allege that fraud in this case arises from Zolner's assignment of "any" malpractice claim to the Funds, and his commitment to provide all assistance necessary and to cooperate with the Funds in taking any further actions necessary or appropriate to effectuate the purpose of the assignment agreement. (Appellant's Brief, at 19.) The crux of the Funds' claim is that if he had acted without fraudulent intent at the time of the assignment, Zolner should later have agreed to pursue the legal malpractice claim on behalf of the Funds. Moreover, Zolner knew that the Funds would only approve of the Plan of Reorganization if the claim was assigned. He thus had an incentive to say anything to induce the Funds' approval of the plan. So goes the Funds' interpretation.

During the December 11, 1996 proceedings, the bankruptcy court concluded that the facts alleged could not support a fraud claim. The court found that Zolner had never given a definitive specific statement that he had withdrawn. (Proceedings II, at 8.) There had been no allegation or demonstration under Illinois law that his testimony would present or at least help present a cause of action for attorney malpractice under state law. *(Id.* at 9.) Lastly, there had been nothing to show that Zolner's vague generalized promise to cooperate would have been sufficient to prove a case of attorney malpractice or that he had expressly withdrawn any express representation of truth or fact to which he had been prepared to testify. *(Id.)*

The bankruptcy court's factual findings are subject to a clearly erroneous stan-

dard. *In re Home Comp Care, Inc.,* 221 B.R. 202, 205 (N.D.Ill.1998) (citing *In re Lefkas Gen. Partners,* 112 F.3d 896, 900 (7th Cir.1997)). This court's review of the record does not reveal that those findings were clearly erroneous. Although the Funds allege that Zolner signed the agreement "with his fingers crossed behind his back," no specific facts appear to support that charge. Zolner may have realized that the Plan of Reorganization would only become effective with the Funds' approval and that such approval would only be attained if he assigned any potential legal malpractice claims. This, however, is not enough to state a cause of action for fraud, which requires a specific material misrepresentation. *See TRW Title Ins.,* 153 F.3d at 828. The bankruptcy court determined that Zolner's intent was not fraudulent, and this court has no reason to undermine that conclusion. Accordingly, the court affirms the bankruptcy court's ruling in its entirety.

In affirming Judge Schmetterer's determination, the court notes that the circumstances do not cast a favorable light on Appellee's conduct. It is not at all clear what Zolner believed the assignment agreement obligated him to do, if not to participate in the state court lawsuit. Nor is it clear why Zolner agreed to the assignment in the first place if he believed there was no claim to assign. The record here raises numerous additional questions, as well. As noted earlier, the settlement negotiations that led to the assignment at issue are at best curious. The court has difficulty imagining a negotiation session in which an attorney representing the debtor agrees to assign a malpractice action against himself. Further, the court has doubts concerning the parties' right to negotiate this agreement on behalf of the debtor's estate. If a legal malpractice claim is an asset of the bankruptcy estate, presumably that claim should have been listed as an asset available for distribution to all creditors, not just to the Funds.

For the reasons noted earlier, however, none of these concerns persuades the court that Judge Schmetterer erred in concluding that fraud was not adequately alleged. In order to plead an action for fraud, the plaintiff must allege: that the defendant made a false statement of material fact, knowing or believing that the statement was false, with the intention of inducing the plaintiff to act; that the plaintiff reasonably relied on the truth of the statement and acted thereon; and that the plaintiff did, in fact, act in reasonable reliance on that false statement and was injured as a result. *Siegel v. Levy Organization Development Co.*, 153 Ill.2d 534, 542–43, 180 Ill.Dec. 300, 607 N.E.2d 194 (1992); *State Security Insurance Co. v. Frank B. Hall & Co.*, 258 Ill.App.3d 588, 196 Ill.Dec. 775, 630 N.E.2d 940 (1994). In this case, Zolner allegedly acknowledged the possibility of a malpractice action against his attorneys and assigned it to the Funds. Perhaps both parties to the assignment were under a misapprehension about the assignability of a malpractice claim under Illinois law; but this can not support a fraud claim because there is no basis for a conclusion that the Funds reasonably relied on any statements made by Zolner (or his attorneys) about the matter. The Funds attorney acknowledged that such a contention would not "pass muster" because "I could go out and look up the law just as well as Mr. Needler can." (Proceedings I, at 13.) As Judge Schmetterer pointed out, nothing in the assignment Zolner signed required him to give certain testimony or to provide evidence within his possession regarding particular facts. Zolner agreed only to assign "any" claims of malpractice. If the Funds needed greater specificity, or an assurance that Zolner himself believed there were valid cognizable claims, the Funds could have requested such assurance. Zolner's assertion that he knows of no malpractice claims suggests he gave little in the way of consideration for the Funds' agreement to withdraw their objections to the Plan of Reorganization; but in this court's view, it does not establish that he is guilty of fraud.

## IV. Request for Sanctions

▪ Appellee Zolner has requested fees and costs, arguing that the appeal has no basis in law or fact and is therefore frivolous and baseless. (Appellee's Brief, at 9.) In essence, Zolner's argument is that the Funds are unable to show any fraud in procurement of the Plan of Reorganization, thereby making the appeal frivolous. Zolner, however, fails to detail how specifically the Funds' legal arguments or factual contentions or purpose in raising the appeal violates FED. R. CIV. P. 11 and are deserving of sanctions. Moreover, Zolner has not complied with the procedures of FED. R. CIV. P. 11(c)'s safe harbor provision. The court accordingly denies the request for costs and fees in this appeal.

### CONCLUSION

Based on the above stated reasons, the decisions of the bankruptcy court are AFFIRMED and the request for sanctions against the Funds is DENIED.