ARDENA SANDERS, as Guardian of the Estate of Dennis Moreland, Plaintiff-Appellant, v. STANDARD MUTUAL INSURANCE COMPANY, Defendant-Appellee.

Fourth District   No. 4—85—0582

Opinion filed April 25, 1986.

Walter H. Kasten, of Springfield, for appellant.

Kepner, Giganti & Kepner, of Springfield (Maurice W. Kepner, of counsel), for appellee.

JUSTICE MORTHLAND delivered the opinion of the court:

The plaintiff appeals from summary judgment in favor of the defendant insurance company on a claim that the defendant unlaw-

fully refused to settle a claim against its insured within policy limits. We affirm.

Richard Dodson and Dennis Moreland were the occupants of Dodson's vehicle when the automobile struck a bridge abutment, causing injuries to both Dodson and Moreland. Dodson had insured the vehicle with the present defendant, Standard Mutual Insurance Company, in the amount of $100,000 per person for bodily injuries, with a limit of $300,000 per accident.

Dodson filed suit against Moreland alleging that Moreland had been driving the vehicle on the night in question and that his negligence caused the accident and led to Dodson's injuries. The present plaintiff, Ardena Sanders, counterclaimed as guardian of Moreland's estate against Dodson. This counterclaim alleged that Dodson was driving the vehicle at the time of the accident and that his negligence caused Moreland's injuries. Under the insurance policy provided by the present defendant, the driver at the time of the accident was the "insured" and only the automobile passenger could recover under the policy.

A jury trial on the complaint and counterclaim resulted in a verdict for Moreland and against Dodson in the amount of $300,000. The defendant insurance company tendered the $100,000 face amount of the policy to Moreland following this verdict and did not pursue an appeal. Dodson subsequently assigned any claim he might have against the insurance company to Moreland's estate.

The plaintiff filed the present action as assignee of Dodson's claim. The plaintiff thus stands in Dodson's shoes as to all defenses valid against him. (*Brown v. State Farm Mutual Automobile Insurance Association* (1971), 1 Ill. App. 3d 47, 272 N.E.2d 261.) The suit alleged that the defendant insurance company failed to give Dodson's interests the same consideration as it gave to its own. The defendant denied generally any breach of duty towards the plaintiff (Dodson) and raised the affirmative defense of estoppel. As a basis for estoppel, the defendant alleged that Dodson had continuously stated that Moreland was the driver of the automobile at the time of the accident. Moreland apparently had no memory of who was driving. Moreover, Dodson had asserted in his original suit that Moreland was the driver and insisted that this claim either proceed to trial or be settled by the insurance company. Dodson also demanded that the defendant not use any of the $100,000 policy limit to settle Moreland's claim unless the company also settled with Dodson for his damages. The record indicates that Moreland had agreed to settle his claim for $65,000 prior to trial. However, the defendant agreed to settle only if both claims

could be eliminated within policy limits. The record indicates that the defendant offered $85,000 to Dodson and Moreland, to be divided among them as they saw fit.

The defendant filed a motion for summary judgment claiming that it had no duty to Dodson to settle the suit against him when Dodson continued to claim that Moreland was the driver and, therefore, the insured under the policy. Moreover, the motion asserted, settlement of Moreland's claim was not possible before trial due to Dodson's opposition and insistence on trying his suit.

The circuit court entered summary judgment against the plaintiff. The court stated that the defendant was "not required to settle with Moreland as long as Dodson insisted Moreland was the driver of the automobile." The court found that Dodson was estopped to allege that the defendant had acted in bad faith because he had himself induced the company to present the issue of who was driving the automobile to a jury. Dodson, thus, could not complain when an adverse verdict was returned.

■■ ■ In defending against a claim pursuant to its policy with an insured, an insurer is normally liable only up to the amount of coverage. However, an insurer may be liable for a judgment in excess of policy, limits under some circumstances. (*Cernocky v. Indemnity Insurance Co. of North America* (1966), 69 Ill. App. 2d 196, 216 N.E.2d 198; *Olympia Fields Country Club v. Bankers Indemnity Insurance Co.* (1945), 325 Ill. App. 649, 60 N.E.2d 896.) The right to control litigation, which the insurance contract gives to the insurer, is subject to an obligation to give the insured's interests equal consideration if the potential recovery in a suit exceeds policy limits. Failure to consider its insured's interests equally with its own when contemplating settlement of a claim subjects the insurer to liability for any judgment in excess of policy limits. *Cernocky v. Indemnity Insurance Co. of North America* (1966), 69 Ill. App. 2d 196, 204, 216 N.E.2d 198.

■ A court should grant summary judgment only when the pleadings, depositions, and admissions, together with any affidavits, show there to be no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Clifford-Jacobs Forging Co. v. Capital Engineering & Manufacturing Co.* (1982), 107 Ill. App. 3d 29, 437 N.E.2d 22.

■ The plaintiff argues that a factfinder might have viewed the company's insistence on either settling both Dodson's and Moreland's claims or trying both cases as a failure to sufficiently consider Dodson's interests. Even accepting that a number of facts indicated that Dodson rather than Moreland was driving the vehicle at the time of

the accident, Dodson is estopped from asserting a claim of bad faith since his own actions induced the defendant to try the case. Because only the automobile passenger could recover from the insured under the terms of the policy, the two claims were mutually exclusive. Had the defendant paid one claimant without a settlement with the other, it would have exposed itself to the possibility of collusion or a jury verdict in favor of the claimant with whom it had not settled. Such a finding would result in additional liability to the defendant up to the policy limits.

The plaintiff makes no claim that the defendant could have ended its potential liability to both Moreland and Dodson within policy limits. Absent this possibility, the plaintiff had no claim that the defendant acted in bad faith. (*Van Vleck v. Ohio Casualty Insurance Co.* (1984), 128 Ill. App. 3d 959, 471 N.E.2d 925.) The plaintiff could not make such an allegation because Dodson had refused to make a full settlement within policy limits possible. The instant case is similar to *Colbert v. Home Indemnity Co.* (1970), 35 A.D.2d 326, 315 N.Y.S.2d 949. In *Colbert,* Whatley (W) recovered a judgment substantially in excess of policy limits from Colbert (C), following a one-car accident involving C and W. C then sued his insurer, alleging it failed, in bad faith, to settle his claim within policy limits. The facts suggested that W's action against C could have been settled within policy limits, but that C insisted on pursuing his counterclaim against W even if the other case settled. The appellate court held that C was not estopped from complaining of the adverse judgment in excess of policy limits. The court refused to accept C's contention that the insurance company should have disbelieved him and settled with W for the full amount of the policy. The court continued:

> "In continuing his own injury action to its conclusion and by steadfastly adhering to his position that Whatley was driving, plaintiff should not now be heard to complain that he was prejudiced when, in fact, it was his misconduct which induced the line of defense by defendants herein." (35 A.D.2d 326, 329, 315 N.Y.S.2d 949, 951.)

Like the plaintiff in *Colbert*, the present plaintiff cannot complain of excess liability when Dodson's own actions led the defendant to trial.

This is not a case such as *Edwins v. General Casualty Co.* (1979), 78 Ill. App. 3d 965, 397 N.E.2d 1231. In *Edwins*, Edwins (E) sued Harlin's (H's) estate for damages following a car accident between E and H in which H was killed. H's estate counterclaimed against E for wrongful death. The attorney retained by H's insurer to defend E's claim also prosecuted the estate's wrongful death counterclaim. The

plaintiff alleged that he had offered to settle his claim against H for an amount within the policy limits and that this offer was refused. A jury returned a verdict in favor of E in an amount exceeding H's policy limits.

The record in *Edwins* indicated that E had made at least one offer to settle within policy limits. The insurance company's attorney acknowledged that a verdict in E's favor would likely exceed policy limits. Finally, inter-office correspondence of the insurance company indicated that the insurer had recognized the weakness of the counterclaim, but nonetheless proceeded with it as a defensive tactic. Under these circumstances, a conflict of interest existed between the interests of H's estate in settling the original claim by E and the interest of H's survivors in obtaining settlement of their counterclaim. This court determined that the above facts could be found to constitute bad faith on the part of the insurer; accordingly, summary judgment for the defendant insurer was reversed.

The circumstances addressed in *Edwins* differ from those in the present case in two crucial respects. First, the counterclaim in *Edwins* did not expose the insurer to additional liability. Accordingly, losing the counterclaim did not increase the insurer's exposure, yet refusing to settle that claim gave the company leverage in the original suit, on which it was potentially liable. By contrast, the present defendant had no conflict of interest in pursuing the claim and the counterclaim together, because it remained liable regardless of who prevailed.

Second, the plaintiff in *Edwins* offered to settle all claims upon which the insurance company was potentially liable, within the policy limits. Thus, a question of fact existed as to whether the insurer rejected the offer in good faith. The present case is distinguishable because no offer of settlement was made which would have permitted the defendant to end its exposure within policy limits.

For the foregoing reasons, we conclude that the circuit court correctly ruled that Dodson and his assignee, the plaintiff, were estopped to allege bad faith on the part of the defendant. Accordingly, the circuit court properly entered summary judgment in favor of the defendant.

Affirmed.

GREEN and SPITZ, JJ., concur.