FRANK BROCATO, Plaintiff-Appellant, v. PRAIRIE STATE FARMERS INSURANCE ASSOCIATION *et al.*, Defendants-Appellees.

Fourth District   No. 4—87—0641

Opinion filed March 9, 1988.

Paul R. Wilson, Jr., of Wilson Law Office, P.C., of Rantoul, for appellant.

Donald F. Hemmesch, Jr., and Dean M. Athans, both of Taslitz, Smith &

Hemmesch, of Chicago, for appellee Prairie State Farmers Insurance Association.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, David E. Jones, and Kathryn A. Spalding, of counsel), for other appellees.

JUSTICE KNECHT delivered the opinion of the court:

Plaintiff Frank Brocato filed a personal injury action against Bruce Strough and received a jury verdict of $375,000. Strough then assigned to plaintiff his causes of action against defendants Prairie State Farmers Insurance Association, Frank J. Simutis, and Ackman, Marek, Boyd and Simutis, Ltd., his insurance carrier and the lawyer and law firm retained by the carrier to defend him against plaintiff's personal injury claim. On May 15, 1987, plaintiff filed suit against defendants in the circuit court of Champaign County claiming the carrier had breached its contractual duties to assignor Strough as well as negligently, wilfully and wantonly, and intentionally failed to provide or adequately control Strough's defense or consider his interests equally with its own. Plaintiff alleged the attorneys committed legal malpractice in the handling of Strough's defense. All three defendants filed motions to dismiss for failure to state a cause of action which were granted on September 8, 1987. Plaintiff appeals the dismissals and we affirm.

Plaintiff and Strough were apparently involved in an automobile collision on May 29, 1982, in which plaintiff suffered personal injuries. At that time Strough had a family automobile policy with defendant carrier. The policy had limits of $50,000 per person for bodily injury. Defendant carrier maintains, pursuant to its contractual obligations to Strough, it investigated the accident and attempted to settle with plaintiff by offering its policy limits. Plaintiff does not deny this contention. Plaintiff declined the offer and filed suit against Strough on June 28, 1983. Defendant carrier retained defendant attorneys to represent Strough. A judgment was later entered against Strough in the amount of $375,000. On May 2, 1987, Strough assigned his claims against the defendants to plaintiff. This suit was commenced shortly thereafter.

Plaintiff's complaint against both the attorneys and the carrier failed to state a cause of action. As to the legal malpractice claims against the attorneys who defended Strough, Illinois courts have determined a cause of action for legal malpractice is not assignable because of the personal nature of the attorney-client relationship

and the potential for abuse. (*Clement v. Prestwich* (1983), 114 Ill. App. 3d 479, 480-81, 448 N.E.2d 1039, 1041; *Christison v. Jones* (1980), 83 Ill. App. 3d 334, 338-39, 405 N.E.2d 8, 11.) In finding that the assignment of a cause of action for legal malpractice offended public policy, the courts in *Clement* and *Christison* cited to the lengthy discussion of the complications of permitting such assignments contained in *Goodley v. Wank & Wank, Inc.* (1976), 62 Cal. App. 3d 389, 133 Cal. Rptr. 83. The discussion in *Goodley* included the following persuasive observations:

> "The assignment of such claims could relegate the legal malpractice action to the market place and convert it to a commodity to be exploited and transferred to economic bidders who have never had a professional relationship with the attorney and to whom the attorney has never owed a legal duty, and who have never had any prior connection with the assignor or his rights. The commercial aspect of assignability of choses in action arising out of legal malpractice is rife with probabilities that could only debase the legal profession. The almost certain end result of merchandizing such causes of action is the lucrative business of factoring malpractice claims which would encourage unjustified lawsuits against members of the legal profession, generate an increase in legal malpractice litigation, promote champerty and force attorneys to defend themselves against strangers. The endless complications and litigious intricacies arising out of such commercial activities would place an undue burden on not only the legal profession but the already overburdened judicial system, restrict the availability of competent legal services, embarrass the attorney-client relationship and imperil the sanctity of the highly confidential and fiduciary relationship existing between attorney and client." 62 Cal. App. 3d at 397, 133 Cal. Rptr. at 87.

■ Although in his complaint plaintiff proceeded on the theory that his cause of action was brought as an assignment of Strough's legal malpractice claims against defendant attorneys, plaintiff also argues that the decision in *Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, 440 N.E.2d 96, allows a nonclient to bring a malpractice suit against an attorney. *Pelham* did not deal with the assignability of such a claim but held that an attorney could owe a duty to a nonclient under the limited circumstance where "the primary purpose and intent of the attorney-client relationship itself was to benefit or influence the third party." (92 Ill. 2d at 21, 440 N.E.2d at 100.) It is difficult to see how the relationship between Strough and his attorneys was meant to ben-

efit plaintiff and, indeed, it has been held that the opposing party to a lawsuit does not fall within the scope of the duty outlined in *Pelham*. (*Doyle v. Shlensky* (1983), 120 Ill. App. 3d 807, 812, 458 N.E.2d 1120, 1125-26.) Therefore, we hold the trial court properly dismissed the counts of plaintiff's complaint directed against the defendant attorneys.

The counts directed against the defendant carrier are more complicated. A cause of action against insurance carriers for bad faith in failing to settle within policy limits has been recognized as assignable in Illinois. (*Brown v. State Farm Mutual Automobile Insurance Association* (1971), 1 Ill. App. 3d 47, 272 N.E.2d 261.) It may be argued that a cause of action for an insurance carrier's wrongful refusal to provide a defense to its insured is also assignable. A carrier's failure to settle in good faith and wrongful refusal to defend are the two traditional theories of recovery by an insured against his carrier and are recognized by the courts of Illinois. *Olympia Fields Country Club v. Bankers Indemnity Insurance Co.* (1945), 325 Ill. App. 649, 60 N.E.2d 896; *Thornton v. Paul* (1978), 74 Ill. 2d 132, 384 N.E.2d 335.

Plaintiff has attempted to plead elements of these two causes of action against the carrier here. By repeatedly pleading defendant carrier "failed to consider the insured's interest equally with its own," the language used by the courts in Illinois cases finding a breach of duty to the insured for a carrier's failure to settle within policy limits (*Sanders v. Standard Mutual Insurance Co.* (1986), 142 Ill. App. 3d 1082, 1084, 492 N.E.2d 917, 918; *Cernocky v. Indemnity Insurance Co. of North America, Inc.* (1966), 69 Ill. App. 2d 196, 206, 216 N.E.2d 198, 204), plaintiff claims to have stated a valid cause of action. However, cases dealing with a failure to settle within policy limits also include the element that the cases could actually have been settled within those limits but because they were not, the insureds were subjected to the excess liability after judgment was entered. Here, it was the plaintiff who refused to settle for policy limits. The attendant elements of bad faith upon the part of the carrier flowing from a failure to effectuate settlement could never come into play. Plaintiff cannot state a valid cause of action on that basis.

Plaintiff's final effort is to plead three counts alleging defendant carrier respectively negligently, wilfully and wantonly, and intentionally failed to supervise or control the defense of plaintiff's action against Strough and the actions of defendant attorneys in conducting such defense. Such allegations are not the same as *failing* to provide a defense to an insured. A claim for failure to provide a defense will arise in the circumstance where there is a question as to coverage as

to the conduct alleged on the part of the insured and the carrier withholds any defense. (See *Thornton*, 74 Ill. 2d 132, 384 N.E.2d 335.) Here, there are no allegations of coverage questions or a refusal to defend. Defendant carrier hired attorneys who actually defended Strough against plaintiff.

■■ ■ Defendant carrier was obligated pursuant to "Part 1—Liability" of its contract of insurance with Strough to "defend any suit alleging *** bodily injury or property damage and seeking damages which are payable under the terms of this policy *** but the company may make such investigation and settlement of any claim or suit as it deems expedient." This language does not include the right to control or supervise the actual conduct of any litigation. The carrier cannot legally practice law (see Ill. Rev. Stat. 1985, ch. 32, par. 411) but must hire an attorney to defend its insureds. It has been held that an insurance carrier is bound by its contractual obligations to furnish defense counsel and any actions beyond those contractual obligations would make the carrier guilty of unlawfully practicing law. (*Oda v. Highway Insurance Co.* (1963), 44 Ill. App. 2d 235, 253, 194 N.E.2d 489, 499.) An exception to the statute prohibiting a corporation from practicing law exists when the corporation is interested in litigation by reason of the issuance of an insurance policy, and there its actions are limited to employing an attorney not acting as one. Ill. Rev. Stat. 1985, ch. 32, par. 415.

■ Once the lawsuit is referred to legal counsel for defense, the carrier's participation in the defense of the claim is restricted to settlement negotiation. In fact, the Code of Professional Responsibility (Code) (107 Ill. 2d R. 3—101(a)) provides that a lawyer shall not aid a nonlawyer in the practice of law. More importantly, the Code mandates that a lawyer shall not permit a person who employs him to render legal services for another to direct or regulate his professional judgment in rendering such legal services. 107 Ill. 2d R. 5—107(c).

■■ The defendant carrier's obligations to its insured Strough regarding defense of the claims against him were fulfilled when defense counsel was retained for him. There is no further obligation to control or supervise the litigation or defense counsel and, in fact, it would be unlawful for the carrier to do so. Any complaints the insured might have about the conduct of the litigation itself must be directed to the attorneys themselves.

■■ Plaintiff complains of not being given a chance to amend his pleadings once the motions to dismiss were allowed. However, given the facts of this case, we fail to see how plaintiff could amend his pleadings to state a valid cause of action against any of the defend-

992

ants. Amendments to a complaint are not permitted where the defect in a complaint is not cured. *DMI, Inc. v. Country Mutual Insurance Co.* (1980), 82 Ill. App. 3d 113, 402 N.E.2d 805.

We affirm the trial court's dismissal of plaintiff's complaint for failure to state a cause of action.

Affirmed.

LUND and SPITZ, JJ., concur.