# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Delatorre v. Safeway Insurance Co.*, 2013 IL App (1st) 120852

---

| | |
|---|---|
| Appellate Court Caption | BONIFACIO DELATORRE, JR., as assignee of RUBEN DELATORRE, Plaintiff-Appellee, v. SAFEWAY INSURANCE COMPANY, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-12-0852 |
| Filed | April 17, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from an automobile accident in which plaintiff was injured as a result of the negligence of defendant's insured, plaintiff, as assignee of defendant's insured, was properly granted summary judgment on the issues of whether defendant breached its duty to defend and damages, since defendant only retained counsel for its insured and forwarded notice to counsel that a default judgment had been entered against its insured and those actions were insufficient to satisfy the duty to defend, and, further, the default judgment was proper, even though defendant had exhausted the per-person policy limits by payments to two other persons who were injured. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 04-L-8101; the Hon. Mary Brigid McGrath, Judge, presiding. |
| Judgment | Affirmed and remanded. |

Counsel on Appeal

Keely Hillison and Steve Grossi, both of Parrillo, Weiss & O'Halloran, of Chicago, for appellant.

Robert Oliver and A. Valerie Acosta, both of Beaulieu Law Offices, PC, of Chicago, for appellee.

Panel

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Presiding Justice Neville concurred in the judgment and opinion.
Justice Sterba concurred in part and dissented in part, with opinion.

## OPINION

¶ 1     This appeal arises out of a three-count complaint filed by plaintiff-appellee Bonifacio Delatorre, Jr., as assignee of Ruben Delatorre, against defendant-appellant Safeway Insurance Company. The only count at issue on appeal is count I, alleging breach of the insurance contract. The circuit court granted summary judgment in favor of plaintiff on the issue of whether defendant breached its duty to defend Ruben, its insured, after finding that defendant took insufficient action on learning that Ruben had been defaulted in the personal injury suit filed against him by plaintiff. The circuit court also entered summary judgment in favor of plaintiff on the issue of damages, awarding him $250,000, the amount of the default judgment entered against Ruben.

¶ 2     On appeal, defendant argues that it did not breach its duty to defend where it retained an attorney to represent Ruben in plaintiff's negligence suit. Alternatively, defendant contends that it is not liable for a judgment that exceeds its policy limits where it did not act in bad faith, and where plaintiff did not show that the judgment was traceable to its breach of duty to defend. For the reasons that follow, we affirm.

¶ 3                              BACKGROUND

¶ 4     In September 1991, plaintiff was a passenger in a car driven by Ruben when they were involved in an accident in which plaintiff was injured.[1] The driver of the other car, Thomas Zentefis, as well as his passenger, William Zenko, were also injured. Plaintiff, Zentefis and Zenko each filed suit against Ruben, seeking recovery for personal injuries allegedly caused by Ruben's negligent conduct.

¶ 5     At the time of the accident, Ruben was insured under a personal automobile insurance policy issued by defendant. The policy carried a bodily injury liability limit of $20,000 per person and $40,000 per accident. Further, the policy obligated defendant to defend any suit

---

[1]Plaintiff and Ruben are relatives.

brought against the insured for bodily injury or property damage covered by the policy, with the understanding that defendant had no obligation to the insured once the policy limits were exhausted by payment.

¶ 6 In December 1991, plaintiff made a demand for the policy limits, which defendant refused; however, after learning of the negligence suits brought against Ruben, defendant agreed to defend Ruben under a reservation of rights. In November 1992, it informed Ruben via letter that it had retained attorney I.R. Strizak to undertake his defense in the negligence suit brought by plaintiff. The letter also stated that because plaintiff could potentially recover a judgment in excess of the policy limits, it could be prudent for Ruben to consider retaining additional counsel at his own expense.

¶ 7 Strizak filed an appearance and answer on behalf of Ruben on December 15, 1992, but there is no evidence that he took any further action to defend Ruben after that date. Defendant admitted that it paid no fees to Strizak in connection with his defense of Ruben, nor did Strizak submit statements for work he performed on Ruben's behalf. The plaintiff moved for sanctions, and the court eventually entered an order of default against Ruben on October 4, 1994. The order specified that the basis for the default was Ruben's "failure to comply with outstanding discovery." Plaintiff's attorney sent this order directly to defendant 10 days later. According to an affidavit by defendant's claims manager, Michael Tomory, the order was sent to Strizak on receipt. But this was the only written communication defendant had with Strizak since retaining him in November 1992. A prove-up hearing on the default judgment was held in November 1995, and plaintiff was awarded $250,000 in damages. The record does not indicate when defendant received actual notice of the damages award.

¶ 8 At the same time this litigation was proceeding, defendant was pursuing a declaratory judgment action against plaintiff, Ruben, Zentefis and Zenko. Specifically, defendant sought a declaration that it was not liable for damages alleged against Ruben in the negligence actions due to the fact that Ruben had misrepresented his marital status on his application for insurance, rendering his policy void. The trial court granted summary judgment against defendant on the basis that it was bound by its agent's actual knowledge of Ruben's marital status. This ruling was affirmed on appeal on March 20, 1998. *Safeway Insurance Co. v. De La Torre*, No. 1-96-0739 (Mar. 20, 1998) (unpublished order under Supreme Court Rule 23).

¶ 9 Several days after learning of the appellate court's ruling, defendant tendered the policy limits to plaintiff, but the tender was rejected. Then, in September 1999, defendant paid the policy limits of $20,000 to both Zentefis and Zenko.

¶ 10 In the meantime, on December 20, 1998, Ruben assigned the cause of action he had against defendant arising out of the contract of insurance to plaintiff for unspecified "value received." Shortly thereafter, plaintiff, as Ruben's assignee, filed suit against defendant. This suit was voluntarily dismissed on July 22, 2003.

¶ 11 About one year later, plaintiff refiled his complaint. After several rounds of amendment and dismissal, the complaint contained three counts: breach of an insurance contract; vexatious and unreasonable delay in settling a claim; and punitive damages. The count seeking punitive damages was dismissed on December 12, 2005, and only count I is at issue

on appeal. In count I, plaintiff alleged that defendant breached its duty to defend when it ignored notice that Strizak was not providing Ruben with a meaningful defense. Plaintiff went on to allege that as a result of defendant's failure to provide an adequate defense, Ruben became subject to a default judgment against him in the amount of $250,000.

¶ 12 In September 2010, plaintiff moved for summary judgment on count I. In its response to plaintiff's motion, defendant filed its own motion to dismiss on the basis of *res judicata*. After hearing argument, on February 4, 2011, the trial court granted plaintiff's motion for summary judgment on the issue of whether defendant breached its duty to defend and denied defendant's motion to dismiss.

¶ 13 Plaintiff then filed a supplemental motion for summary judgment on the issue of damages. Specifically, he sought entry of a final judgment in his favor as to count I, and an award of damages of $250,000, the amount of the default judgment entered against Ruben. Defendant opposed this motion and also filed a cross-motion for summary judgment on the basis that it had exhausted its policy limits on behalf of Ruben and was not liable for contract damages in excess of those limits. On February 28, 2012, the court, after hearing argument, granted plaintiff's motion for summary judgment, denied defendant's cross-motion, and entered judgment in favor of plaintiff in the amount of $250,000 plus costs. Defendant timely appeals from both the February 2011 and February 2012 orders.[2]

¶ 14                                    ANALYSIS

¶ 15 As a threshold matter, we address defendant's and plaintiff's respective motions to strike, both of which we ordered taken with the case. Defendant asks us to strike the excerpted deposition testimony of Michael Tomory, Richard Pancotto, Deborah Tau, Kenneth Hirsch, and Laura McGrath cited in plaintiff's response brief. Defendant aptly notes that the full transcripts do not appear in the record on appeal, which is a violation of Illinois Supreme Court Rule 341(h) (eff. July 1, 2008). Accordingly, we cannot consider them in our review. See *MJ Ontario, Inc. v. Daley*, 371 Ill. App. 3d 140, 150 (2007) (materials not contained in record are not properly before reviewing court).

¶ 16 Plaintiff contends that these deposition transcripts were before the circuit court on his motion for summary judgment and suggests that it was defendant's burden to include the transcripts in the record on appeal. This is not the rule. As the appellee, plaintiff had seven days after defendant filed the record to serve upon defendant any additional materials he believed were necessary to include. Ill. S. Ct. R. 323(a) (eff. Dec. 13, 2005). Because he failed to do so, he is now held to " 'acquiesce[ ] in the appellant's opinion that every part of the record essential to properly present the questions raised on appeal has been certified to the reviewing court.' " *City of Chicago v. Alessia*, 348 Ill. App. 3d 218, 227 (2004) (quoting *Nicholl v. Scaletta*, 104 Ill. App. 3d 642, 646 (1982)).

¶ 17 Plaintiff also filed his own motion to strike portions of defendant's reply brief that

[2]No appeal is taken from the portion of the February 2011 order denying defendant's motion to dismiss on the basis of *res judicata*.

objected to plaintiff's citation to unfiled deposition transcripts. Specifically, plaintiff argues that any objection to the failure to include complete, certified deposition transcripts is forfeited because it was not raised before the trial court. But defendant is not objecting to the fact that plaintiff may have relied on incomplete or uncertified transcripts in the *trial court*, but is instead arguing that he may not do so before *this court*. For the reasons stated above, we agree. In sum, we grant defendant's motion to strike citations to unfiled deposition transcripts, and deny plaintiff's motion to strike portions of defendant's reply brief.

¶ 18     Turning then to the merits of defendant's appeal, at issue is whether the circuit court erred in granting summary judgment in favor of plaintiff on the questions of whether defendant breached its duty to defend and whether defendant is liable for damages. Summary judgment is proper when the pleadings, depositions, and affidavits demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2010); *State Farm Mutual Automobile Insurance Co. v. Coe*, 367 Ill. App. 3d 604, 607 (2006). In making this determination, the record materials must be viewed in the light most favorable to the nonmovant. *Federal Insurance Co. v. Lexington Insurance Co.*, 406 Ill. App. 3d 895, 897 (2011). Our review of a lower court's order granting summary judgment is *de novo*. *Hall v. Henn*, 208 Ill. 2d 325, 328 (2003).

¶ 19                              A. Breach of Duty to Defend

¶ 20     We begin our analysis with the court's order of February 4, 2011, granting summary judgment in favor of plaintiff on the issue of whether defendant breached its duty to defend. Defendant acknowledges that pursuant to the terms of the insurance contract, it was required to "defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy." Where an insurer has been found to have breached a similar contractual duty, it has outright refused to provide its insured with a defense. See, *e.g.*, *Illinois Tool Works, Inc. v. Commerce & Industry Insurance Co.*, 2011 IL App (1st) 093084, ¶¶ 10-11; *Uhlich Children's Advantage Network v. National Union Fire Co. of Pittsburgh*, 398 Ill. App. 3d 710, 714 (2010). Here, however, defendant informed its insured that it would undertake his defense in the personal injury suits against him, subject to a reservation of rights. And, defendant retained attorney I.R. Strizak, who entered an appearance on behalf of the insured. This case thus presents a unique issue: whether an insurer that has retained counsel to defend its insured, may, in certain limited circumstances, still be found to have breached its duty to defend.

¶ 21     The Fourth District in *Brocato v. Prairie State Farms Insurance Ass'n*, 166 Ill. App. 3d 986 (1988), answered this question in the negative. In *Brocato*, the plaintiff, also the assignee of the insured, filed a complaint against the defendant insurer alleging in part that it negligently, willfully and wantonly, and/or intentionally failed to supervise or control the defense of its insured, as well as the actions of the attorneys it retained to defend its insured. *Brocato*, 166 Ill. App. 3d at 990. As a result, the insured became liable for a $375,000 jury verdict. *Id.* at 988. The *Brocato* court distinguished the defendant's alleged inaction from a refusal to provide a defense altogether and concluded that an insurer's obligation to its

-5-

insured regarding defense of the action against its insured is fulfilled when it retains counsel for the insured. *Id.* at 991. This conclusion was mainly based on the court's belief that a contrary holding would force an insurer to control or supervise the litigation and thereby involve the insurer in the practice of law, from which it is prohibited in engaging. *Id.* We find this decision unpersuasive for several reasons.

¶ 22        First, *Brocato* is factually distinguishable from the case here. In *Brocato*, the attorney hired by the insurer "actually defended" the insured throughout trial. *Id.* Though the *Brocato* court did not explain what it meant by "actual defense," we cannot conceive of any definition of the term that would render Strizak's actions satisfactory. To be sure, Strizak did enter an appearance, file an answer, and initiate discovery on December 15, 1992, shortly after he was retained. But the electronic docket of the circuit court of Cook County, made part of the record on appeal, reveals that Strizak undertook no further action on Ruben's behalf in the ensuing three years during which litigation was pending, even after an order of default was entered against Ruben. Further, defendant admits that Strizak never submitted statements of legal work he performed in defense of Ruben. The single most reasonable inference that can be drawn from these facts is that–unlike the insurer in *Brocato*–defendant, through Strizak, failed to provide Ruben with an "actual defense."

¶ 23        Second, the implications of the rule announced in *Brocato* that an insurer satisfactorily discharges its duty to defend solely by retaining an attorney for its insured are troubling. Importantly, the law requires good faith and fair dealing by both parties in performing their contractual obligations. *Bonner v. Westbound Records, Inc.*, 76 Ill. App. 3d 736, 744 (1979). The *Brocato* holding, however, would allow an insurer to escape its legal obligation to provide good faith representation and instead freely abandon its insured to an attorney who either is unwilling or unable to undertake the defense, or who, as in this case, inexplicably deserts the client. In our view, an insurer's promise to defend entitles the insured to expect that its insurer will retain an attorney who will in fact take action to defend the insured in the face of a default order. The insurer's duty, after all, is to *defend*, not merely to provide representation, and is an ongoing duty throughout the litigation. This result is in keeping with the well-established rule that contractual terms should be read to avoid inequities or the imputation of bad faith to a party. *River Forest State Bank & Trust Co. v. Rosemary Joyce Enterprises, Inc.*, 294 Ill. App. 3d 173, 179 (1997).

¶ 24        We are persuaded by the conclusion of the Court of Appeals for the Seventh Circuit in *Thoresen v. Roth*, 351 F.2d 573 (7th Cir. 1965), where the court was confronted with facts comparable to the facts here. In *Thoresen*, the insured tendered the defense of a malpractice action brought against it to its insurer, who agreed to conduct a defense as to certain counts of the malpractice complaint. *Thoresen*, 351 F.2d at 575. The insurer informed its insured that it had turned the matter over to an attorney; however, that attorney did not participate–or even file an appearance–in the litigation. *Id.* at 575-76. The Seventh Circuit found "incomprehensible" the insurer's argument that "mere retention of [an attorney] was a compliance with its obligation to defend the insured," and agreed with the district court that the insurer had breached its duty to defend. *Id.* Likewise we are confounded by this argument and conclude that retaining an attorney, standing alone, does not discharge an insurer's duty to defend.

¶ 25 Defendant maintains that it did more than merely retain an attorney. Specifically, when it learned that its insured had been subject to an order of default, it sent the order to Strizak. The circuit court found this limited action was insufficient to satisfy defendant's duty to defend, and we agree. Significantly, we do not question the *means* defendant used to contact Strizak, but rather the fact that there is no evidence that defendant made any further effort to obtain an explanation from Strizak as to why the default was entered, or whether he sought to have it vacated. Indeed, defendant admits that with the exception of the letter forwarding the notice of default, it had no written communication with Strizak between December 3, 1992, when Strizak accepted responsibility for Ruben's defense, until over three years after entry of the default judgment against Ruben.

¶ 26 Ultimately, defendant's nominal, passive, and one-way communication with the attorney ostensibly retained to defend its insured[3] leads us to conclude that defendant breached its duty to defend. To the extent this conflicts with the holding in *Brocato*, we decline to follow it. See *Reed v. Galaxy Holdings, Inc.*, 394 Ill. App. 3d 39, 46 (2009) (holding appellate court decision not binding on other appellate districts).

¶ 27 Finally, we do not share the *Brocato* court's concerns, echoed by defendant, that our holding today implicates the statutory prohibition on insurers practicing law. See 705 ILCS 220/1 (West 2010); see also *Bowers v. State Farm Mutual Automobile Insurance Co.*, 403 Ill. App. 3d 173, 176 (2010). Our supreme court has defined the practice of law as " 'the giving of advice or rendition of any sort of service by any person, firm or corporation when the giving of such advice or rendition of such service requires the use of any degree of legal knowledge or skill.' " *People ex rel. Chicago Bar Ass'n v. Barasch*, 406 Ill. 253, 256 (1950) (quoting *People ex rel. Illinois State Bar Ass'n v. Schafer*, 404 Ill. 45, 50 (1949)). We fail to see how requiring an insurer to ascertain whether its insured is actually being defended, particularly following notice of an order of default, necessitates the use of any legal skill or knowledge.

¶ 28 The order of February 2011 granting summary judgment in favor of plaintiff on the issue of whether defendant breached its duty to defend is affirmed.

¶ 29                                     B. Damages

¶ 30 Having determined that defendant did breach its duty to defend, we next turn to the court's order of February 28, 2012, granting plaintiff's motion for summary judgment on the issue of damages and denying defendant's cross-motion on the same issue. At the heart of the parties' dispute is whether defendant may be liable for a $250,000 default judgment entered against Ruben where it has exhausted its policy limits of $20,000 per person and $40,000 per accident.

¶ 31 The leading case on the issue of when an insurer is responsible for the full amount of a judgment entered against its insured in excess of policy limits is *Conway v. Country Casualty Insurance Co.*, 92 Ill. 2d 388 (1982). There, the insurer, Country Casualty, refused to defend

---

[3]Defendant admits that it never made payment to Strizak for agreeing to represent Ruben.

-7-

its insured, Conway, in a negligence suit arising out of an automobile accident, on the grounds that it had already exhausted its policy limits by paying the underlying plaintiff's expenses resulting from her injuries. *Conway*, 92 Ill. 2d at 391-92. Because the underlying plaintiff did not execute a release in exchange for this payment, her suit against Conway remained pending. *Id.* at 392. After settling with the plaintiff for $10,000, Conway sought to recover this amount from Country Casualty, alleging that it had breached its duty to defend. *Id.* The supreme court agreed that Country Casualty's actions constituted a breach of the duty to defend and then considered whether County Casualty could be liable for the $10,000 settlement when it had already exhausted its policy limits. *Id.* at 395-96.

¶ 32    The court cited *Reis v. Aetna Casualty & Surety Co. of Illinois*, 69 Ill. App. 3d 777 (1978), for the following propositions:

> " 'The mere failure to defend does not, in the absence of bad faith, render the insurer liable for that amount of the judgment in excess of the policy limits. [Citations.] Nevertheless, damages for a breach of the duty to defend are not inexorably imprisoned with the policy limits, but are measured by the consequences proximately caused by the breach.' " *Conway*, 92 Ill. 2d at 397-98 (quoting *Reis*, 69 Ill. App. 3d at 790).

The court went on to conclude that Conway failed to establish that the $10,000 settlement was caused by Country Mutual's breach of duty to defend, and, furthermore, that the trial court correctly found that Country Mutual had not acted in bad faith. *Id.* at 398-99.

¶ 33    As the Illinois Supreme Court recognized in *Conway*, damages for breach of the duty to defend " 'are not inexorably imprisoned within policy limits.' " *Conway*, 92 Ill. 2d at 397-98 (quoting *Reis*, 69 Ill. App. 3d at 790). We read the *Conway* opinion to suggest two ways in which an insured may recover an excess judgment based on its insurer's breach of duty to defend: (1) tort based, as a punitive measure, where the insurer has acted in bad faith, or (2) contract based, as a compensatory measure, where the insured's damages are proximately caused by the insurer's breach of duty.

¶ 34    The case that best guides the issue of damages is *Green v. J.C. Penney Auto Insurance Co.*, 806 F.2d 759 (7th Cir. 1986).[4] There, the court analyzed *Conway* and *Reis*, concluding that irrespective of bad faith, an insurer may be liable for damages beyond the policy limits if its breach of duty caused the excess judgment. *Id.* at 762 (relying on *Reis*, holding insured may recover total amount of the judgment, including amount exceeding policy limits if the insured can establish that insurer "abandoned [the insured's] defense"). See also post-*Conway* cases *Fidelity & Casualty Co. of New York v. Mobay*, 252 Ill. App. 3d 992, 997 (1992) ("When an insurer wrongfully refuses to defend [its insured], it is liable to the insured for breach of contract. The measure of damages for such a contractual breach is generally the amount of the judgment against the insured."); *Gruse v. Belline*, 138 Ill. App. 3d 689, 697-98 (1985) ("In Illinois, an accepted measure of damages for breach of an insurance contract to defend is the amount of the judgment rendered against the insured ***.")

¶ 35    The entry of the final judgment by default in the underlying personal injury action,

---

[4]*Green* was overruled on other grounds by *Taco Bell Corp. v. Continental Casualty Co.*, 388 F.3d 1069 (7th Cir. 2004).

including that portion in excess of policy limits, directly flows from the breach of contract; that is, the proximate cause of the default judgment, entered about 13 months following the default order, was defendant's breach. This situation could have been averted altogether had defendant seen to it that its insured was actually defended as contractually required. To hold otherwise, we would subject the insured to the likelihood of paying some or all of the default judgment out of his own pocket, an incongruous result, considering that the entry of neither the default order nor the default judgment was of his instigating or choosing, or even known to him until years later, but instead, was the natural consequence of his insurer's breach of contract. We thus conclude that the trial court's grant of summary judgment on the issue of damages was proper.

¶ 36    As to the dissent's reading of the majority opinion, recovery of damages over the policy limits is not as simple as "showing that a judgment had been entered against the insured." *Infra* ¶ 48. The plaintiff's evidence established that the original default and the subsequent default judgment both resulted entirely from the defendant's breach, and defendant put forward no contrary evidence. The general rule is that damages for breach of contract should place the injured party in the same position it would have been in had the contract been fully performed. See, *e.g.*, *Central Information Financial Services, Ltd. v. First National Bank of Decatur*, 128 Ill. App. 3d 1052, 1062 (1984). Here, no default, no default judgment. Unexplained is why the insured should be placed in the predicament of potential responsibility for payment of any of the default judgment under the specific facts of this case. Also unexplained is how and with what kind of evidence, other than sheer speculation, the insured would offer to prove that if he had received a proper defense the judgment would have been something other than $250,000. The law does not put the insured in this trick bag.

¶ 37    We expressly limit our decision on the suitability of the default judgment entered against the insured as the measure of damages to the precise facts of this case, and do not decide its applicability to future cases.

¶ 38                              CONCLUSION

¶ 39    For the reasons stated, we affirm the circuit court's order of February 4, 2011, granting plaintiff's motion for summary judgment on the issue of whether defendant breached its duty to defend, and the order of February 28, 2012, granting summary judgment in favor of plaintiff as to damages and denying defendant's cross-motion for summary judgment on the same issue.

¶ 40    Finally, because defendant did not move for summary judgment on count II of plaintiff's complaint, which alleged vexatious and unreasonable delay in settling a claim, we remand to the circuit court for resolution of that allegation.

¶ 41    Affirmed and remanded.

¶ 42    JUSTICE STERBA, concurring in part and dissenting in part.

¶ 43    I concur in part because I agree with the majority that defendant breached its duty to

defend when it took limited, passive action to monitor the attorney it retained to defend its insured. However, I cannot join in the majority's holding with respect to damages.

¶ 44 The majority correctly reads *Conway* as permitting two theories–tort and contract–under which an insured may recover damages in excess of the policy limits. It is undisputed that plaintiff here is proceeding under a contract theory; as such, it is required to prove that its damages were "proximately caused by the insurer's breach of duty." *Supra* ¶ 33; see also *Conway*, 92 Ill. 2d at 397-98. The majority believes plaintiff has met this burden. I do not.

¶ 45 I find it useful to begin by outlining what is meant by the term "proximate cause." Proximate cause encompasses both cause in fact and legal cause. *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 225-26 (2010). At issue here is cause in fact, which exists where there is a reasonable certainty that a defendant's acts caused the injury. *Young v. Bryco Arms*, 213 Ill. 2d 433, 446 (2004). We ask not whether the injury "flows from" a defendant's breach, as the majority contends (*supra* ¶ 35), but whether the injury would have occurred absent that breach. *Young*, 213 Ill. 2d at 446.

¶ 46 The majority frames the issue as whether the default judgment was proximately caused by defendant's breach of duty. However, I believe the better question is whether a lesser judgment would have been entered absent defendant's breach. See *Conway*, 92 Ill. 2d at 398 (asking not whether the settlement itself was caused by Country Casualty's breach of duty to defend, but whether a settlement for a lesser amount would have been reached if Country Casualty had defended the action). This plaintiff has not shown. There is no evidence in plaintiff's motion for summary judgment that Ruben would have been required to pay an amount less than $250,000 if defendant had properly discharged its duty to defend him. The majority remarks that requiring proof of this sort places plaintiff in a "trick bag." *Supra* ¶ 36. I disagree. Plaintiffs are often called upon to adduce similar evidence in many other causes of action. For example, in order to state a claim for attorney malpractice, a plaintiff must show, among other things, that but for his attorney's malpractice, he would have prevailed in the underlying action. *Preferred Personnel Services, Inc. v. Meltzer, Purtill & Stelle, LLC*, 387 Ill. App. 3d 933, 939 (2009). I fail to see how requiring plaintiff in the instant case to prove that a judgment of a lesser amount would have been entered is any more onerous than the proof we require of plaintiffs making attorney-malpractice claims.

¶ 47 I also find it curious that the majority correctly cites to the well-settled rule of contract law that damages are intended to place the injured party in the position he would have been if the contract had been fully performed (*supra* ¶ 36), but then does not follow this principle to its logical conclusion in the case at bar. Specifically, if the insurance contract had been fully performed, and Ruben was properly defended, he would have been indemnified only up to the policy limits–$40,000. Damages in excess of these limits are a windfall, and thus are only recoverable under certain circumstances (see *Conway*, 92 Ill. 2d at 397-99), which are not present here.

¶ 48 Finally, I am troubled by the majority's citation to *Mobay Chemical* and *Gruse*. While both cases make the general statement that damages for breach of a contractual duty to defend is generally the amount of the judgment against the insured, neither case involved an

-10-

insurer that was subject to a judgment in excess of policy limits.[5] *Mobay Chemical*, 252 Ill. App. 3d at 996-97; *Gruse*, 138 Ill. App. 3d at 691-95. Were we to take the holdings in those cases at face value, we would essentially allow all plaintiffs to recover damages in excess of policy limits without proving causation, a result that is plainly at odds with our supreme court's holding in *Conway*. More significantly, adoption of these broad holdings to cases involving excess judgments (as opposed to judgments within the policy limits) would have the practical effect of eliminating all breach-of-duty-to-defend cases that sound in tort. No insured would assume the burden of proving bad faith or negligence if all that was required to recover damages in excess of the policy limits was a showing that a judgment had been entered against the insured.

¶ 49      For these reasons, I would reverse the order of February 28, 2012, granting summary judgment in favor of plaintiff as to damages and denying defendant's cross-motion for summary judgment on the same issue, and enter summary judgment in favor of defendant on the issue of damages stemming from its breach of the duty to defend.

¶ 50      I therefore concur in part and respectfully dissent in part.

---

[5]Indeed, an insurance contract was not even at issue in *Gruse*. That case addressed the issue of whether a party subject to a judgment against it needed to present proof of an ability to pay or actual payment before collecting damages from its attorney. *Gruse*, 138 Ill. App. 3d at 697-98.